James KUJAWSKI, as Special Administrator of the Estate of Angeline Ciesielczyk a/k/a Angela Cieler, Plaintiff-Appellant,

Margaret H. HECKLER, Secretary of Department of Health and Human Services, United States of America, and State of Wisconsin, Department of Health and Social Services, Plaintiffs,

v.

ARBOR VIEW HEALTH CARE CENTER, a partnership consisting of Edwin M. Kruchten and Elizabeth M. Kruchten, partners, and Occidental Fire & Casualty Company of North Carolina, Defendants-Respondents.†

Court of Appeals

*No. 84–1789. Submitted on briefs November 22, 1985.— Decided May 22, 1986.*

(Also reported in 389 N.W.2d 831.)

†Petition to review granted.

For the plaintiff-appellant the cause was submitted on the brief of *David C. Pappas* of Madison.

For the defendants-respondents the cause was submitted on the brief of *Bradley D. Armstrong* and *Barbara J. Swan* and *Brynelson, Herrick, Gehl & Bucaida* of Madison.

Before Gartzke, P.J., Dykman, J., and Eich, J.

GARTZKE, P.J.   James Kujawski, special administrator of the estate of Angeline Ciesielczyk, appeals from a judgment dismissing the complaint against Arbor View Health Care Center, a nursing home, and its owners and insurer. Ciesielczyk was injured when she fell out of her wheelchair while a resident at Arbor View. Kujawski claimed that the nursing home was

negligent in failing to provide some sort of safety device to prevent decedent from falling out of the wheelchair. The dispositive issue is whether expert testimony was necessary to establish the standard of care the nursing home and its employes owed to decedent. We hold that expert testimony was necessary, and because Kujawski failed to provide it, the trial court properly dismissed the complaint.

Kujawski presented evidence that decedent was old and suffered from various physical disabilities. She could not walk on her own and needed help to move from her bed to her wheelchair. She was too big for her wheelchair. She fell out of her wheelchair on four previous occasions. On one such occasion she was alone and attempted to get out of her wheelchair. Arbor View had seatbelts to secure patients in wheelchairs. The employes assigned to push decedent in her wheelchair were never trained when and how to use a seatbelt on a resident.

November 11, 1982, an Arbor View aide pushed decedent in her wheelchair toward a bingo table. Decedent's lap robe fell to the floor, she attempted to retrieve it, and the aide got it for her. The aide continued pushing the chair toward the table. When decedent was about 2-1/2 feet from the table, she moved as if to pull herself up to the table but leaned over and fell out of the chair. Her head was lacerated and her right thigh fractured. The leg did not heal and was amputated. Her condition deteriorated and she died the following summer.

The trial court granted Arbor View's motion to dismiss at the close of Kujawski's case because no expert testimony established the standard of care owed by Arbor View to decedent. Kujawski argues that it is in-

conceivable that jurors would need an expert to tell them how a nursing home should handle a resident such as decedent.

■

If necessary expert testimony is lacking, the case may be dismissed for insufficient proof. *Cramer v. Theda Clark Memorial Hospital,* 45 Wis. 2d 147, 152, 172 N.W.2d 427, 429 (1969). We consider the necessity for expert testimony without deference to the trial court's opinion. *Olfe v. Gordon,* 93 Wis. 2d 173, 179–85, 286 N.W.2d 573, 576–78 (1980); *Cramer,* 45 Wis. 2d at 153–54, 172 N.W.2d at 430–31. Expert testimony is not necessary unless the subject matter involved is outside the realm of the ordinary experience of mankind, and requires special learning, study or experience. *Cramer,* 45 Wis. 2d at 150, 172 N.W.2d at 428–29. The *Cramer* court concluded that expert testimony is not required to determine whether a hospital patient should be in or out of restraints. *Id.* at 154, 172 N.W.2d at 431.

Since *Cramer* was decided, whether a physical restraint should be imposed upon a resident in a nursing home has been removed from the conjecture of lay persons by regulations of the Department of Health and Social Services adopted in 1977. *See* Wis. Adm. Code sec. H 32.055(1)(k), Cr. Register, February 1977, No. 254, eff. 3–1–77. Wisconsin Adm. Code sec. HSS 132.31(1)(k) provides that a nursing home resident has the right to be free of physical restraints "except as authorized in writing by a physician for a specified and limited period of time and documented in the resident's

medical record."[1] A medical decision is therefore necessary before a restraint may be imposed on a nursing home resident.

That conclusion is buttressed by Wis. Adm. Code sec. HSS 132.60(6), adopted in 1974. *See* Wis. Adm. Code sec. H 32.10(4), Cr. Register, November 1974, No. 227, eff. 12–2–74. Section HSS 132.60(6) defines physical restraints and allows such restraints only on the order of a physician:

(6) *Physical and chemical restraints.*

(a) *Definitions.* As used in this subsection, the following definitions apply:

1. "Physical restraint" means any article, device, or garment which is used primarily to modify resident behavior by interfering with the free movement of the resident, and which the resident is unable to remove easily, or confinement in a locked room. Mechanical supports shall not be considered physical restraints.

---

[1] Wisconsin Adm. Code sec. HSS 132.31(1) provides in material part:

*Residents' Rights.* Every resident shall, except as provided in sub. (4), have the right to:

. . . .

(k) *Abuse and restraints.* Be free from mental and physical abuse, and be free from chemical and physical restraints except as authorized in writing by a physician for a specified and limited period of time and documented in the resident's medical record. Physical restraints may be used in an emergency when necessary to protect the resident from injury to himself or herself or others or to property. However, authorization for continuing use of the physical restraints shall be secured from a physician within 12 hours. Any use of physical restraints shall be noted in the resident's medical records. "Physical restraint" includes, but is not limited to, any article, device, or garment which interferes with the free movement of the resident and which the resident is unable to remove easily, and confinement in a locked room.

2. "Mechanical support" means any article, device, or garment which is used only to achieve the proper position or balance of the resident, which may include but is not limited to a geri chair, posey belt, jacket, or a bedside rail.

. . . .

(b) *Orders required.* Physical or chemical restraints shall be applied or administered only on the written order of a physician which shall indicate the resident's name, the reason for restraint, and the period during which the restraint is to be applied.

■

Plaintiff contends that a seatbelt or similar wheelchair safety device is a mechanical support, as defined in Wis. Adm. Code sec. HSS 132.60(6)(a)2, and is therefore excluded from the requirement of a physician's order. That contention does not ring true in view of his own characterization of decedent as old, senile, excitable and unable to look after herself, and his reliance upon at least one other instance in which she apparently attempted to stand up alone and fell from her wheelchair.

Plaintiff introduced two seatbelts in evidence which were easily undone. He points out that if a resident can "easily remove" a device, it is not, as defined in Wis. Adm. Code sec. HSS 132.60(6)(a)1, a restraint, and if it is not a restraint, no doctor's order or medical judgment is necessary.

Given decedent's physical and mental condition, however, whether she required a restraining device, or whether an easily removable safety device would have sufficed, is itself a medical decision.

We conclude expert testimony was required on the seatbelt issue. Because plaintiff presented no such tes-

timony, the trial court properly dismissed the complaint.

*By the Court.*—Judgment affirmed.

EICH, J. *(dissenting).* I dissent because I do not believe that expert medical testimony is necessary to establish the standard of care applicable to a nursing home where the claimed negligence consists of failing to properly secure an elderly, disabled patient in her wheelchair while transporting her through the facility.

Angeline Ciesielczyk, an eighty-two year old non-ambulatory patient, was injured when she fell from her wheelchair while being pushed into the dining area by a nursing home aide. She alleged in her complaint that the home was negligent in failing to secure her in the chair and in the manner in which the chair was being manipulated by the aide.

In *Cramer v. Theda Clark Memorial Hospital,* 45 Wis. 2d 147, 153–54, 172 N.W.2d 427, 430 (1969), the court held that expert medical testimony was not necessary to establish a hospital's negligence in "leaving [the patient] unattended and under inadequate restraint." There the patient, recently out of surgery and under intensive care, was injured when, while unattended, he undid his bed restraints, got out of bed and fell to the floor. A few minutes earlier, a nurse had untied the restraint on his right arm to allow him to eat and left the room.

The majority makes brief reference to *Cramer* but concludes that the entire subject matter (use of physical restraints in nursing homes) has since been "removed from the conjecture of lay persons" by Wis. Adm. Code, sec. HSS 132.31(1)(k). In my view, both the context and content of that section clearly establish

184

that it has no bearing on the evidentiary question in this case.

Wisconsin Adm. Code, sec. HSS 132.31(1)(k) provides in part that every nursing home resident has "the right to . . . [b]e free from mental and physical abuse, and be free from chemical and physical restraints except as authorized in writing by a physician for a specified and limited period of time." The code subchapter in which it appears is entitled "Residents' Rights and Protections," and its several subsections guarantee nursing home patients the rights, among others, to have unrestricted communications with family physicians and attorneys, to have private visits, to present grievances, to be informed of fees and charges, to be treated with courtesy and respect, to retain personal clothing and effects, to be fully informed of treatment and care, and, of course, to be free from mental and physical abuse and the use of chemical and physical restraints except as authorized by a physician.

As the majority indicates, another section of the code states that physical or chemical restraints (defined as devices or medication "used primarily to modify resident behavior by interfering with the free movement of the resident") are to be applied only on a physician's orders, which must specify the reasons for use of the restraints and the period during which they are to be applied. Wis. Adm. Code, secs. HSS 132.60(6)(a)1, 3, and 132.60(6)(b). Succeeding provisions authorize limited use of restraints without a physician's orders in "emergencies," and indicate that a locked room may also be used as a restraint. Finally, the section requires use of the restraints of "the least restrictive type appropriate to the resident," and provides that, while restrained, residents must "have their positions

changed and personal needs met . . . at least every 2 hours." Secs. 132.60(6)(e), (f), Stats.

I simply do not believe the code provisions on patients' rights and the use of chemicals, devices, and locked rooms to "modify behavior" may be read to overrule *Cramer* and require expert medical testimony in order to state a prima facie case for negligence in failing to adequately secure an elderly patient in a wheelchair while moving her about the home. Whether the failure to provide a simple seat or lap belt such as that placed in evidence by appellant at trial was negligence is not a question of technical medical care. It is a matter of "routine care," which never has been regarded as a subject for expert testimony. *Cramer,* 45 Wis. 2d at 154, 172 N.W.2d at 430. One does not need to be an expert to make such an assessment, for it does not relate to the type of hospital or nursing home care that requires expert testimony. As stated in *Cramer,* "the facts could be ascertained by the ordinary . . . senses of a nonexpert." *Id.* at 153, 172 N.W.2d at 430.

I would reverse and let the jury make that determination. It is just as well qualified as any physician to do so.