Sam VULTAGGIO and Mary Jane Vultaggio,
Plaintiffs-Appellants,

v.

GENERAL MOTORS CORPORATION and Fagan
Chevrolet-Cadillac, Inc., Defendants-
Respondents.

Court of Appeals

*No. 87–1397. Argued May 18, 1988.—Decided July 27, 1988.*

(Also reported in 429 N.W.2d 93.)

877

On behalf of the plaintiffs-appellants, there were briefs and oral arguments by *Lawrence Alan Towers,* of Milwaukee.

On behalf of the defendants-respondents, there were briefs by *David J. Hase* and *Robert E. Shumaker* of *Foley & Lardner* of Milwaukee. *Judith A. Zakens,* Esq., Office of the General Counsel General Motors Corporation, of counsel. There was oral argument by *Mr. Shumaker.*

On behalf of the Department of Justice, State of Wisconsin, there was an amicus curiae brief by *Donald J. Hanaway,* attorney general and *William C. Wolford,* assistant attorney general. Oral argument by *Mr. Wolford.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. Sam and Mary Jane Vultaggio appeal from a grant of summary judgment dismissing their common-law breach of warranty claims against General Motors Corporation and Fagan Chevrolet-Cadillac, Inc. (collectively G.M.). They also appeal the summary judgment ruling that their claims are not covered under Wisconsin's Lemon Law, secs. 218.015(2)(a) and (b), Stats. (1983–84). The underlying basis of all these claims is that, because of transmission problems, their S–10 Chevrolet pickup truck would not perform a function for which it was expressly warranted, that of satisfactorily towing their travel trailer. Because we conclude that there are genuine issues of material fact in dispute, we reverse and remand for further proceedings. We also hold that the trial court was in error in its interpretation of sec. 218.015.

The Vultaggios purchased a 1984 Chevrolet S–10 pickup truck from G.M. on July 7, 1984. At the

suggestion of a G.M. salesperson, the pickup was "specially equipped" to ensure that it could pull the Vultaggios' 3,500 pound trailer. Both warranty and promotional literature were shown to the Vultaggios, representing that the truck could tow 5,000 pounds. In addition, a "truck expert" at Fagan examined the Vultaggios' trailer and stated that a properly equipped S-10 would satisfactorily tow the trailer.

Sam Vultaggio's affidavit alleges that the truck's transmission could not handle the load. The transmission would "discharge fluid, emit smoke and a burning odor, and the transmission housing would get so hot that [Mary Jane Vultaggio] could not rest her feet on that portion of the floor." Over the course of the next year, when the Vultaggios attempted to use the vehicle to pull the trailer, the same symptoms recurred. On one occasion while examining the truck, a G.M. mechanic found the transmission fluid to be "burnt." On another occasion, G.M. inspected the transmission and changed the fluid, but found nothing wrong with the transmission. In March of 1985, the Vultaggios, believing that their pickup was "inadequate," purchased a larger vehicle to pull their trailer.

Following two arbitration proceedings, the Vultaggios commenced this action alleging violations of secs. 218.015, 402.315, 402.608, and 402.719, Stats., 15 U.S.C. sec. 2301 *et seq.,* and Wisconsin common law. The trial court granted summary judgment on all claims, stating that the Vultaggios' affidavits and supporting materials neither established that their trailer's weight was within the warranted towing capacity nor that there was a problem with the transmission related to towing of the trailer.

This court reviews decisions on summary judgment *de novo*.[1] *United States Fidelity & Guar. Co. v. Goldblatt Bros.*, 142 Wis. 2d 187, 190, 417 N.W.2d 417, 419 (Ct. App. 1987). When reviewing a summary judgment, we follow the same methodology as the trial court. That methodology has been described many times. *See In re Cherokee Park Plat*, 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983). We need not repeat it here. *Goldblatt Bros.* at 190, 417 N.W.2d at 419. With that methodology in mind, we turn to the issues.

The first issue is whether summary judgment was properly granted as to all claims because there was no evidence of the loaded weight of the Vultaggios' trailer. However, by affidavit, Sam Vultaggio stated that the trailer when empty weighed 3,200 pounds and stated in an answer to interrogatories that "my travel trailer (... weighes [sic], even when loaded, about 3,500 pounds.)" Thus, contrary to G.M.'s assertions that there are no facts regarding the loaded

---

[1]G.M. argues that our standard of review should be whether the trial court abused its discretion in granting summary judgment, because the Vultaggios' affidavits were allegedly filed one day late. In support of its position, G.M. cites to language in *Wright v. Hasley*, 86 Wis. 2d 572, 578–79 n. 3, 273 N.W.2d 319, 322–23 (1979), that summary judgment shall be entered "if appropriate" when an adverse party does not properly respond to a motion for summary judgment. However, even assuming the Vultaggios' affidavits were late, the record shows that the trial court decided the motion on the merits, not on any discretionary grounds. Further, since *Wright*, the supreme court has severely criticized the application of an abuse of discretion standard in review of summary judgment cases. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 317, 401 N.W.2d 816, 821 (1987).

weight of the trailer, Vultaggio's statements are sufficient to create a genuine issue of material fact. As such, summary judgment was improperly granted on grounds that the trailer did not weigh less than the warranted towing capacity of the pickup truck.

G.M. also contends that summary judgment was appropriate as to all claims because the Vultaggios failed to set forth sufficient evidentiary facts establishing that the problems complained of resulted because the pickup is not capable of towing up to 5,000 pounds as warranted. G.M. argues that Sam Vultaggio's lay opinion describing the symptoms he observed was not "sufficient to raise a genuine issue of fact as to the existence of a warranty defect." G.M. submits that an expert opinion is necessary.

We do not agree. Expert testimony "is not necessary unless the subject matter is outside the realm of the ordinary experience of mankind, and requires special learning, study or experience." *Kujawski v. Arbor View Health Care Center,* 132 Wis. 2d 178, 181, 389 N.W.2d 831, 832 (Ct. App. 1986), *rev'd on other grounds,* 139 Wis. 2d 455, 407 N.W.2d 249 (1987). When the matters to be proven are within the area of common knowledge and lay comprehension, a lay opinion may suffice. *Olfe v. Gordon,* 93 Wis. 2d 173, 180, 286 N.W.2d 573, 576 (1980). We hold that this is the case here.

Sam Vultaggio stated by affidavit that when he tried to tow the trailer, the transmission made loud noises, discharged fluid and smoke, and the floor of the vehicle became so hot that his wife could not rest her feet on the floor. He further stated that when the truck was serviced in Florida, "excessive metal" was found in the transmission pan. In addition, repair

records of G.M. indicate that their mechanics found the transmission fluid to be "burnt" after the Vultaggios complained of transmission problems while pulling the trailer. Finally, in an answer to interrogatories, Sam Vultaggio reported that when returning from Florida after having problems with the transmission, he was only able to reach speeds between 35 and 40 miles per hour.

In our opinion, a lay person, as a matter of common experience, can readily draw an inference that a truck is incapable of towing the trailer as warranted based upon the facts reported by Sam Vultaggio. The grant of summary judgment, based upon the conclusion that there were no facts giving rise to claims for relief on breach of warranty grounds, was inappropriate.

We now turn to the "lemon law" claims. The trial court construed that law to mean that the Vultaggios' allegations could not come under the auspices of the act. We will discuss each allegation in turn.

The Vultaggios first allege a violation of sec. 218.015(2)(b), Stats. (1983–84).[2] Section 218.015(2)(b) provides in relevant part:

> If after a reasonable attempt to repair the nonconformity cannot be repaired, the manufacturer shall, at the direction of the consumer, either replace the motor vehicle with a comparable new motor vehicle or accept return of the motor vehicle and refund the full purchase price plus any amounts paid by the consumer at the point of sale

[2]Section 218.015, Stats. (1983–84), was amended by 1985 Wis. Act 205 and 1987 Wis. Act 105. The 1983–84 version is applicable here. Therefore all references to sec. 218.015 will be to the 1983–84 statute.

and all collateral costs associated with the repair of the nonconformity less a reasonable allowance for use to the consumer ....

This subsection allows the consumer a refund or replacement of an auto that cannot be repaired even though a reasonable attempt has been made by the manufacturer to repair it.

The Vultaggios contend that they are entitled to a refund or replacement under sec. 218.015(2)(b), Stats., because a nonconformity in their truck has not been repaired after a reasonable attempt to repair. The Vultaggios allege that a nonconformity exists because their truck would not successfully tow their 3,500 pound trailer though warranted to tow 5,000 pounds. They claim that a reasonable attempt to repair exists because their truck was "out of service" for at least thirty days due to this nonconformity.

G.M. makes three responses to that argument. First, it cites sec. 218.015(1)(h), Stats., which defines reasonable attempt to repair:

"Reasonable attempt to repair" means any of the following occurring within the term of an express warranty applicable to a new motor vehicle or within one year after first delivery of the motor vehicle to a consumer, whichever is sooner:

1. The same nonconformity with the warranty is subject to repair by the manufacturer or any of its authorized motor vehicle dealers at least 4 times and the nonconformity continues.

2. The motor vehicle is out of service for an aggregate of at least 30 days because of warranty nonconformities.

884

Thus, unless a manufacturer has had four chances to repair the same defect without success,[3] or the vehicle is out of service for thirty days, a reasonable attempt to repair has not been offered to the manufacturer. *Hartlaub v. Coachmen Indus., Inc.,* 143 Wis. 2d 791, 798, 422 N.W.2d 869, 871 (Ct. App. 1988).

G.M. asserts that the truck was not "out of service" as defined in sec. 218.015(1)(h)2, Stats. It contends that out of service means "out of service ... because of corrective repairs." It cites Legislative Reference Bureau Brief 83–4, at 2, and concludes that to be out of service, a vehicle must be unavailable for the consumer's use because of the performance of corrective repairs.

■

G.M.'s reliance on Legislative Reference Bureau Brief 83–4 is misplaced. The brief was prepared after passage of sec. 218.015, Stats., and is inconsistent with the statute's legislative history. As originally introduced, 1983 Assembly Bill 16, which as amended became 1983 Wis. Act 48, defined "reasonable attempt to repair" as:

> The motor vehicle is out of service for an aggregate of at least 30 days because *of repair* of warranty nonconformities .... [Emphasis added.]

The amended bill, which became law, defines "reasonable attempt to repair" as:

---

[3]The Vultaggios' complaint also alleged that the truck was subject to four unsuccessful attempts to repair the same nonconformity under sec. 218.015(2)(b), Stats. The record shows that at most the vehicle was returned to G.M. only three times for repair. Thus, summary judgment was appropriate and we affirm the trial court on this issue.

The motor vehicle is out of service for an aggregate of at least 30 days because of warranty nonconformities.

Sec. 218.015(1)(h)2. The deletion of "repair of" in the definition indicates that out of service is not limited to only those periods in which the vehicle is unavailable to the consumer.

Section 218.015, Stats., is remedial in nature, designed to protect consumers when their vehicles do not perform as warranted. *Hartlaub,* 143 Wis. 2d at 801, 422 N.W.2d at 873. In construing the statute with a view towards the social problem which the legislature was addressing when enacting the law, *see id.,* and in light of its legislative history, we conclude that "out of service" includes those periods when the vehicle is not capable of rendering *service as warranted* due to a warranty nonconformity, even though the vehicle may be in the possession of the consumer and may still be driven in the performance of other service by the consumer. To hold otherwise would eviscerate the law, preventing consumers whose vehicles are operable, but riddled with nonconformities, from seeking redress under sec. 218.015.

G.M. contends that allowing the out of service requirement to be met when the vehicle is in the possession of the consumer would allow recovery even if the consumer never reported the nonconformity to the manufacturer for repair. We disagree. Under sec. 218.015(2)(a), Stats., the consumer must report a nonconformity and make the vehicle available for repair within the applicable time period. Further, sec. 218.015(1)(h) begins with the language "[r]easonable

*attempt* to repair." (Emphasis added.) There can be no "attempt" unless the consumer notifies the manufacturer and provides it with the opportunity to effect repairs. As long as there exists notice and opportunity, the thirty-day clock runs.

Here, the truck was warranted as able to tow 5,000 pounds. Yet, as alleged by the Vultaggios, it was not capable of satisfactorily pulling their 3,500 pound travel trailer during repeated attempts over the course of nearly a year. This problem was reported to the manufacturer. A question of fact thus exists as to whether the vehicle was out of service at least thirty days and thus subject to a reasonable attempt to repair as defined in sec. 218.015(1)(h), Stats.

G.M. next disputes the Vultaggios' claim for recovery under sec. 218.015(2)(b), Stats., by arguing that the facts alleged by the Vultaggios do not establish a "nonconformity" as defined in sec. 218.015(1)(f). A nonconformity is a condition or defect "which substantially impairs the use, value or safety of a motor vehicle ...." *Id.* G.M. argues that because the Vultaggios have put 27,000 miles on the truck and have "successfully" pulled the trailer 3,800 miles, there can be no nonconformity.

That a vehicle has served its primary function of providing "simple transportation," for 27,000 miles, however, does not satisfy the use, value or safety standard of sec. 218.015(1)(f), Stats. *See Chmill v. Friendly Ford-Mercury,* 144 Wis. 2d 796, 804, 424 N.W.2d 748, 750–51 (Ct. App. 1988) (use, value and safety of vehicle driven 78,000 miles with pulling defect held substantially impaired). Rather, each case

must be decided on its own facts. *Id.* at 804, 424 N.W.2d at 751.

Sam Vultaggio's affidavit stated that when towing the trailer, "the transmission would discharge fluid, emit smoke and a burning odor, and the transmission would get so hot that [Mary Jane Vultaggio] could not rest her feet on that portion of the floor." G.M. repair records show that on one occasion, the transmission fluid was "burnt." In addition, on one return trip from Florida, the speed of the truck while pulling the trailer was limited to 35 to 40 miles per hour. Eventually, the Vultaggios were required to purchase a larger vehicle to pull their trailer because, in their words, the S-10 was "inadequate."

Thus, there is a genuine issue of material fact in dispute as to whether the truck could successfully tow the trailer. This underlying factual dispute must be resolved before the legal standard of substantial impairment can be applied. *See Chmill,* 144 Wis. 2d at 803, 424 N.W.2d at 750.

G.M.'s third response as to why the Vultaggios' claim under sec. 218.015(2)(b), Stats., should fail is because the Vultaggios have not shown that the nonconformity cannot be repaired. However, this assertion, even if true, is of no import. Continuation of prior nonconformities is not essential to recovery under sec. 218.015(2)(b) where the gravamen of the complaint is that the vehicle has been out of service for at least thirty days pursuant to sec. 218.015(1)(h)2. *Hartlaub,* 143 Wis. 2d at 801, 422 N.W.2d at 873. Thus, if the Vultaggios establish that the vehicle has been out of service for thirty days because of warranty nonconformities, they need not also establish that

these nonconformities cannot be repaired or that they still exist. *Id.*

At the trial court, the Vultaggios presented an alternative form of relief premised upon sec. 218.015(2)(a), Stats., which provides:

> If a new motor vehicle does not conform to an applicable express warranty and the consumer reports the nonconformity to the manufacturer or any of its authorized motor vehicle dealers and makes the motor vehicle available for repair before the expiration of the warranty or one year after first delivery of the motor vehicle to a consumer, whichever is sooner, the nonconformity shall be repaired.

The Vultaggios contended before the trial court and contend now that this subsection creates a separate basis for relief under sec. 218.015(7)[4] and is a remedy independent of sec. 218.015(2)(b).[5] The trial court disagreed.

---

[4]Section 218.015(7), Stats., reads:

In addition to any other remedies, a consumer damaged by a violation of this section may bring an action for twice the amount of any pecuniary loss, together with costs and disbursements and reasonable attorney fees, and for equitable relief determined by the court.

[5]G.M. argues that summary judgment was appropriate on this issue because the Vultaggios' complaint did not allege a violation of sec. 218.015(2)(a), Stats., and cites *Gray v. Rural Casualty Ins. Co.,* 47 Wis. 2d 663, 667, 177 N.W.2d 817, 819 (1970), for the proposition that pleadings cannot be amended on a motion for summary judgment. However, since *Gray* was decided, Wisconsin has adopted new rules of pleading and practice. *Welzien v. Kapec,* 98 Wis. 2d 660, 661, 298 N.W.2d 98, 99 (Ct. App. 1980). These rules have done away with technical pleadings to allow controversies to be fairly tried and determined. *Id.* at 662–63, 298 N.W.2d at 99. We

G.M. argues in favor of the trial court's decision, asserting that subsec. (2)(a) must be read in conjunction with the remaining paragraphs of subsec. (2), such that paragraph (a) merely creates the statutory duty to repair warranty nonconformities, and "that paragraphs (b) through (d) set forth the essential prerequisites of a claim" brought under sec. 218.015, Stats. In other words, G.M. reads subsec. (a) as an introduction to the relief heretofore discussed relative to sec. 218.015(2)(b).

In support of its position, G.M. points to the legislative history of the statute. However, resort to the legislative history of a statute is not warranted when the statute is clear on its face. When the language of a statute is unambiguous, we need look no further. *Mullen v. Coolong,* 132 Wis. 2d 440, 448, 393 N.W.2d 110, 113 (Ct. App. 1986), *overruled on other grounds,* 137 Wis. 2d 581,. 405 N.W.2d 327 (1987). Section 218.015(2)(a), Stats., unequivocally imposes a duty on manufacturers to repair reported nonconformities by stating that such nonconformities "shall be repaired."

Section 218.015(7), Stats., provides in pertinent part that "[i]n addition to any other remedies, a consumer damaged by violation of *this section* may bring an action . . . ." (Emphasis added.) A manufacturer who fails to repair a nonconformity reported to it pursuant to sec. 218.015(2)(a) has violated its duty under "this section"—sec. 218.015. Had the legislature intended to limit the availability of actions under sec.

conclude, therefore, that *Gray* is inapposite. *See Welzien* at 661–63, 298 N.W.2d at 99.

218.015(7) to those arising under subsec. (2)(b) rather than the section as a whole, it could have easily done so.

G.M. argues that allowing consumers to bring a claim under subsec. (2)(a) of the statute would render subsec. (2)(b) superfluous. We disagree. Subsection (2)(b) contains a series of conditions which, if satisfied, entitle the consumer to the remedies of refund or replacement. These remedies are unavailable for violations of subsec. (2)(a). In this manner, subsecs. (2)(a) and (2)(b) are best viewed as addressed to different obligations of the manufacturer: a duty to repair a defective vehicle, in subsec. (a), and in subsec. (b), a duty to replace or refund the cost of a vehicle which is subject to an inordinate amount of repair. With their different requirements and remedies, subsec. (2)(a) does not render subsec. (2)(b) superfluous.

Subsection (2)(a) protects the consumer from those instances in which the consumer is unable to establish the "reasonable attempt to repair" necessary under sec. 218.015(2)(b), Stats., but can show that the dealer has not, cannot, or will not repair a nonconformity brought to its attention during the warranty period. In accord with the remedial purpose of sec. 218.015, that consumer should still be afforded relief.[6] See Central Nat'l Bank v. Dustin, 107 Wis. 2d 614, 321 N.W.2d 321 (Ct. App. 1982).

We conclude that summary judgment was inappropriately granted in this case. Genuine issues of

---

[6]On appeal, the Wisconsin Attorney General participated in this case as amicus curiae regarding the construction of sec. 218.015, Stats. The positions taken by the Wisconsin Attorney General are consistent with our decision.

material fact remain in dispute. We therefore reverse and remand for further proceedings.

*By the Court.*—Affirmed in part, reversed in part and cause remanded.