Bruce A. Tammi, Plaintiff-Appellee,

v.

Porsche Cars North America, Inc.,
Defendant-Appellant.

Supreme Court

*No. 2008AP1913–CQ. Oral argument February 4, 2009.
—Decided July 17, 2009.*

2009 WI 83

(Also reported in 768 N.W.2d 783.)

For the defendant-appellant there were briefs by *Jeffrey S. Fertl* and *Hinshaw & Culbertson LLP,* Milwaukee, and oral argument by *Jeffrey S. Fertl.*

For the plaintiff-appellee there was a brief by *Bruce A. Tammi,* and oral argument by *Bruce A. Tammi.*

An amicus curiae brief was filed by *Frank J. Daily, Mitchell S. Moser,* and *Quarles & Brady LLP,* Milwaukee, on behalf of the Product Liability Advisory Council, Inc.

¶ 1. DAVID T. PROSSER, J. This case is before the court on certification from the United States Court of Appeals for the Seventh Circuit pursuant to Wis. Stat.

§ 821.01 (2007–08)[1] and Circuit Rule 52 (Circuit Rules of the U.S. Court of Appeals for the Seventh Circuit). The four certified questions relate to damages permitted in a suit under Wis. Stat. § 218.0171, Wisconsin's Lemon Law,[2] in a specific factual situation. The questions restated by the Seventh Circuit are as follows:

> 1. When a consumer defined in Wisconsin Statute Section 218.0171(1)(b)4[.] brings an action pursuant to subsection (7), if that consumer, after making his Lemon Law demand, then exercises an option to purchase and buys the vehicle as provided in the lease, is the consumer then entitled to recover the amount of the purchase price?
>
> 2. If the consumer defined in Wisconsin Statute Section 218.0171(1)(b)4[.] is entitled to recover the vehicle purchase price when he exercises the purchase option provided in the lease, does the purchase amount qualify as pecuniary loss subject to the doubling provision in subsection (7)?
>
> 3. If the answers to questions 1 and 2 are in the affirmative, is the consumer permitted to keep the purchased vehicle in addition to the receipt of the damage award or must the vehicle be returned to the manufacturer?
>
> 4. Is a damage award under subsection (7) subject to a reduction for reasonable use of the vehicle?

*Tammi v. Porsche Cars N. Am., Inc.,* 536 F.3d 702, 713–14 (7th Cir. 2008).

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

[2] Wisconsin's Lemon Law is "a remedial statute enacted to protect buyers [and lessees] of new [motor] vehicles if they experience certain types of problems with their purchases." *Garcia v. Mazda Motor of Am., Inc.,* 2004 WI 93, ¶ 1, 273 Wis. 2d 612, 682 N.W.2d 365. Vehicles with problems covered under the statute are known as "lemons." *See id.,* ¶ 9.

¶ 2. We answer the first certified question as follows: No. When a consumer who is leasing a motor vehicle brings an action against the manufacturer of the vehicle pursuant to subsection (7) of Wis. Stat. § 218.0171, and then exercises his option to purchase the vehicle under the terms of the lease, the consumer is not entitled to damages for the price of his voluntary purchase because his purchase was not "caused" by any violation of the statute by the manufacturer. *See* Wis. Stat. § 218.0171(7).

¶ 3. Because our answer to the first certified question is "no," it is unnecessary for us to reach the second and third certified questions, as they depend upon a "yes" answer to the first question. A discussion of certified questions two and three would devolve into an impermissible discussion of a hypothetical situation, because this case does not implicate a consumer who is entitled to recover his vehicle purchase price. As the resolution of those issues "depends on hypothetical or future facts, [they are] not ripe for adjudication and will not be addressed by this court." *State v. Armstead,* 220 Wis. 2d 626, 631, 583 N.W.2d 444 (Ct. App. 1998); *see also City of Janesville v. County of Rock,* 107 Wis. 2d 187, 199, 319 N.W.2d 891 (Ct. App. 1982) ("Courts will not render merely advisory opinions.").

¶ 4. We answer the fourth certified question as follows: The plain language of the statute makes clear that a consumer's refund under Wis. Stat. § 218.0171(2)(b)2.b. or 3.a. is subject to a reasonable allowance for use. Because we read subsection (7) in conjunction with the rest of the statute, we conclude that the amount of "pecuniary loss" under Wis. Stat. § 218.0171(7) must incorporate a reasonable allowance for use before the pecuniary loss is doubled.

51

## I. FACTS AND PROCEDURAL HISTORY[3]

¶ 5. On May 30, 2003, Bruce A. Tammi (Tammi) entered into a 36–month lease with Zimbrick Inc. Hyundai & European of Madison (Zimbrick) for a 2003 Porsche 911 Turbo Coupe.[4] Tammi was an avid car enthusiast and member of the Porsche Club of America. He "leased the vehicle for use in competitive car club events as well as for his work commute" to his law firm in Milwaukee. *Tammi,* 536 F.3d at 704.

¶ 6. Tammi's payment obligations under the 36–month lease amounted to $69,327.10. This total included an initial payment of $1,999.85, 35 monthly payments of $1,912.35 ($66,932.25), and a termination fee of $395.00.

¶ 7. Tammi had significant experience purchasing expensive cars, and he frequently purchased vehicles via lease contracts containing options to purchase. In this case, he negotiated a sophisticated lease under which he could purchase the Porsche at the end of the lease or at any time during the lease. The negotiated purchase price at the end of the lease was $64,344.10, plus taxes and fees. If Tammi decided to exercise his option to purchase prior to the expiration of 36 months, the $64,344.10 purchase price would be increased pro rata based upon the previously negotiated residual value of the vehicle, namely $63,994.10.

---

[3] The facts and procedural history are based upon the Seventh Circuit's decision in *Tammi v. Porsche Cars North America, Inc.,* 536 F.3d 702 (7th Cir. 2008); the relevant order of the United States District Court for the Eastern District of Wisconsin, Charles N. Clevert, Jr., Judge, *Tammi v. Porsche Cars North America, Inc.,* No. 04–C-1059, 2007 WL 777522 (E.D. Wis. Mar. 13, 2007); and the briefs and appendices of the parties.

[4] Zimbrick promptly assigned its interest in Tammi's lease to U.S. Bank (hereinafter "the lessor").

¶ 8. Approximately eight months after Tammi took possession of the Porsche, he began to encounter mechanical problems with the vehicle. *See id.* Tammi's Porsche was equipped with a rear spoiler that was "designed to deploy automatically when the vehicle exceeded 75 m.p.h." *Id.* When the vehicle traveled below 40 m.p.h., the spoiler was designed to retract. *See id.* Tammi's problem was that, when the spoiler deployed, it often failed to retract. *Id.* at 704–05. This occurred about one-third of the time that Tammi drove the vehicle. *See id.* at 704, 707. Moreover, when the spoiler failed to retract, "it prompted an audible chime to ring intermittently, a red warning light to illuminate, and a red warning message image to display in the center instrument cluster." *Id.* at 704. These warning signals were annoying, distracting, and frequently forced Tammi to pull over or leave the highway to turn off his vehicle in an effort to reset the spoiler and defective alarms. *See id.* at 704–05. In addition, the vehicle's radio would sometimes blare loudly upon start-up before eventually returning to normal volume after a few minutes. *See id.*

¶ 9. Between March and August 2004, Tammi took his vehicle to a certified Porsche service provider for repairs at least eight times.[5] *See id.* at 705. He always brought the vehicle to certified Porsche service providers so that he would not violate any provisions of his lease. *Id.*; *see also* Wis. Stat. § 218.0171(2)(a). These many attempts to correct the problems were not successful. *Tammi,* 536 F.3d at 705.

¶ 10. On September 7, 2004, Tammi submitted the requisite notice under Wisconsin's Lemon Law to Porsche. Tammi submitted his notice using a Lemon Law

---

[5] Tammi first took his Porsche for repairs on March 2, 2004, by which time he had put about 6,500 miles on the car.

notice form provided by the Wisconsin Department of Transportation. In his notice, Tammi informed Porsche that the "vehicle had been made available for repair at least [four] times for the same defect during its first year of warranty, and [he] demanded a refund calculated in accordance with the Lemon Law, plus collateral costs." *Id.* (internal quotations omitted). Tammi also offered to return the vehicle. In a letter dated October 6, 2004, Porsche rejected Tammi's Lemon Law claim, stating "its understanding that [the] vehicle had been repaired." *Id.*

¶ 11. On October 14, 2004, following Porsche's denial of his claim, Tammi filed a Lemon Law complaint in Waukesha County Circuit Court, seeking double damages for his lease payments in accordance with Wis. Stat. § 218.0171(7). *See id.* Citing diversity jurisdiction, Porsche removed the case to the United States District Court for the Eastern District of Wisconsin. *See id.* A month or so later, on December 6, 2004, Tammi filed a motion for summary judgment. The district court denied Tammi's motion, finding that there were issues of material fact that remained unresolved: specifically, whether the vehicle had a substantial impairment that would constitute a nonconformity under Wis. Stat. § 218.0171(1)(f).

¶ 12. Tammi filed Federal Rule 26[6] disclosures on January 14, 2005, alleging damages for the amount of his lease, his tire rack and floor mat purchases, and his insurance expenditures. His initial damages disclosure did not include the purchase price of the vehicle. Following Tammi's disclosures, the district court ordered that discovery be completed by September 1, 2005.

---

[6] Federal Rule of Civil Procedure 26 requires each party to file certain pretrial disclosures, including "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii).

¶ 13. In December 2005, while the case was pending, Tammi exercised his option to purchase the Porsche vehicle for $75,621.88. *Tammi,* 536 F.3d at 705. Because Tammi's purchase occurred after his initial lease payment of $1,999.85, plus 29 subsequent monthly lease payments of $1,912.35, his payments under the lease totaled $57,458.00.[7] Despite his ongoing claim that the vehicle was a lemon, Tammi testified that he had fixed the spoiler malfunction on his own, *see id.* at 705 n.1, and decided to purchase the vehicle because he felt it was worth more than the lease buyout amount.

¶ 14. On April 12, 2006, the district court held a scheduling conference during which it referred the case to mediation and set a final pretrial conference for August 3, 2006. Tammi subsequently revised his Rule 26 disclosures to include a claim of damages for the purchase price of the vehicle. In response, Porsche filed several motions in limine asking the court to limit Tammi's damages to his lease payments. The district court denied these motions.

¶ 15. Ultimately, Tammi sought the following in damages:

> [R]ecovery of his lease payments ($57,458.00), the amount he paid for the purchase of the car under the [buyout] option of the lease ($75,621.88), insurance ($2,457.85), winter tires ($2,044.11) and floor mats and an auto manual ($788.71), for a total of $138,370.55. [He also wanted] to retain ownership of the car.

---

[7] The parties differ slightly as to the total lease payments made between May 30, 2003, and November 30, 2005. This is, of course, a question of fact. The district court calculated Tammi's lease payments to be $57,458.00. *Tammi,* 2007 WL 777522, *3. We accept this finding of fact. Any discrepancy as to the actual amount of payments made does not affect this court's discussion of the certified questions.

*Id.* at 705–06. Porsche countered that Tammi's lease payments were "proper subjects of damage, but that the other items were not related to the vehicle repairs." *Id.* at 706. The district court allowed Tammi to seek all his enumerated damages, reserving the right to reconsider the damage award after the jury's verdict. *Id.*

¶ 16. On August 24, 2006, the jury determined that Tammi had suffered a "nonconformity covered by the manufacturer's express warranty which substantially impaired the use, value or safety of his vehicle." *Id.* (internal quotes omitted). It determined that Tammi had complied with the requirements of the Lemon Law and awarded him "$26,600 for pecuniary loss resulting from the nonconformity." *Id.*

¶ 17. Following the verdict, Tammi renewed his pre-trial position that the court should have given a specific Lemon Law damages instruction, not a general damages instruction, and he asked that the damage award be changed as a matter of law. After hearing argument and taking the issue of damages under advisement, the district court revised the jury award, concluding as a matter of law that Tammi was entitled to reimbursement for his lease payments ($57,458.00) and the purchase price he paid for the vehicle ($75,621.88). *See id.* Pursuant to the Wisconsin Lemon Law, the court doubled the "pecuniary loss" for a total award of $266,159.76, plus costs.[8] *See id.* The district court also allowed Tammi to keep the Porsche. *Id.*

---

[8] In addition to pursuing any other remedy, a consumer may bring an action to recover for any damages caused by a violation of this section. The court shall award a consumer who prevails in such an action twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate.

Wis. Stat. § 218.0171(7).

¶ 18. In holding that Tammi was entitled to the return of his lease payments, the district court stated that, because Tammi was obligated to make those payments under the lease, those payments should be refunded. *See Tammi v. Porsche Cars N. Am.*, No. 04–C–1059, 2007 WL 777522, *4 (E.D. Wis. Mar. 13, 2007). The court recognized that, "at the very least, the consumer suffers pecuniary loss in the amount of the refund he or she should have received [under Wis. Stat. § 218.0171(2)(b)3.a.]." *Id.* (internal quotations omitted). Because Tammi's total lease obligations—the payments he had already made as well as those that he would have made had he not exercised his purchase option—totaled $69,327.10, the district court determined that reimbursement of this amount was consistent with the purposes of the Lemon Law. *See id.* The court declared that awarding Tammi anything less than his total lease obligation "flies in the face of two purposes of the [L]emon [L]aw: putting the consumer back in the position he was in when the car was leased and doing so in a timely manner." *Id.*

¶ 19. As to the return of Tammi's purchase price, the district court relied on this court's opinion in *Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 542 N.W.2d 148 (1996). The court focused on *Hughes*'s holding that a purchaser is entitled to the return of his entire purchase price, not just reimbursement for actual expenditures made. *See Tammi,* 2007 WL 777522, *5 (citing *Hughes,* 197 Wis. 2d at 977, 979, 983).[9] Additionally, the district court reasoned that return of Tammi's purchase price comports with the legislature's decision to include leased vehicles within the coverage of Wisconsin's Lemon Law. *See id.* at **6, 10. Finally,

---

[9] *See also Tammi,* 2007 WL 777522, *9.

the court stated that a failure to reimburse Tammi's purchase price would not put Tammi in the position he was in when he purchased the vehicle. *See id.* at \**7–8.

¶ 20. The district court declined to include Tammi's costs for winter tires, a tire rack, or insurance in the revised damages award because these items were not "purchased at or near the time of delivery of the car." *Id.* at \*9. Instead, it ruled that reimbursable pecuniary losses for accessories may include only " 'the amount paid by the consumer at the point of sale . . . [such as] anything paid for by the consumer that day, including non[-]manufacturer options paid for at the time of the sale whether installed prior to sale or after.' " *Id.* at \*9 (quoting *Kiss v. Gen. Motors Corp.,* 2001 WI App 122, ¶ 16 n.5, 246 Wis. 2d 364, 630 N.W.2d 742).

¶ 21. Finally, the district court ruled that Tammi could keep the Porsche and refused to reduce the damage award based on Tammi's reasonable use of the vehicle prior to his Lemon Law complaint. The court stated that Tammi would not receive "twice the amount of any pecuniary loss," as required under Wis. Stat. § 218.0171(7), "[i]f the court requires that [he] return the car." *Id.* at \*10. In short, the district court reasoned that the return of the car or a reduction of the damage award for reasonable use would cause Tammi to receive less than double damages, a remedy mandated by Wis. Stat. § 218.0171(7). *See id.* The court determined that, because Wis. Stat. § 218.0171(7) did not contain a provision for reducing the damages award based on the consumer's reasonable use of the vehicle, Tammi's recovery should not be reduced based on phantom provisions. *See id.* at \*11.

58

¶ 22. Following the district court's modification of the damages award, Porsche appealed to the United States Court of Appeals for the Seventh Circuit.[10] *Tammi,* 536 F.3d at 706–07. Porsche presented three arguments: (1) "there was insufficient evidence for the jury to conclude that the vehicle had a nonconformity" that violated the Lemon Law; (2) the jury's verdict was against the "overwhelming weight of the evidence" regarding any substantial impairment of the vehicle's use, value, or safety; and (3) the district court erred in calculating Tammi's damage award. *See id.*

¶ 23. On August 4, 2008, the Seventh Circuit concluded that "there was sufficient evidence presented that the vehicle Tammi leased suffered a nonconformity that substantially impaired its use," thereby rejecting Porsche's argument that the jury's verdict was against the clear weight of the evidence. *Id.* at 707. In assessing the district court's measure of damages, the Seventh Circuit decided to certify four questions to this court because the answers to those questions are matters of first impression in Wisconsin that could have significant impact on Wisconsin consumers. *See id.* at 713–14.

¶ 24. This court accepted certification on September 11, 2008.

## II. STANDARD OF REVIEW

¶ 25. The issues in this case require us to determine damages under Wisconsin's Lemon Law. To do this, we must interpret the language contained in Wis. Stat. § 218.0171. Statutory interpretation presents a

---

[10] The appeal was heard by Judge Joel M. Flaum, Judge Kenneth F. Ripple, and Judge Daniel A. Manion, who authored the court's opinion. *Tammi,* 536 F.3d at 704.

question of law that we review de novo. *See Hughes,* 197 Wis. 2d at 978–79 (interpreting and applying Wisconsin's Lemon Law de novo).

## III. DISCUSSION

¶ 26. To answer the questions certified by the Seventh Circuit, we must interpret Wisconsin's Lemon Law statute. The object of statutory interpretation is to determine statutory meaning. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. This requires us to focus primarily on the language of the statute:

> We assume that the legislature's intent is expressed in the statutory language. Extrinsic evidence of legislative intent may become relevant to statutory interpretation in some circumstances, but is not the primary focus of inquiry. It is the enacted law, not the unenacted intent, that is binding on the public. Therefore, the purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect.

*Id.*

¶ 27. Therefore, we start with the language of the statute. *Id.,* ¶¶ 44–45; *see also DaimlerChrysler v. LIRC,* 2007 WI 15, ¶ 37, 299 Wis. 2d 1, 727 N.W.2d 311. When examining the statutory language, "if the plain meaning is clear, a court need not look to the rules of statutory construction or to extrinsic sources of interpretation." *DaimlerChrysler,* 299 Wis. 2d 1, ¶ 37; *see also Kalal,* 271 Wis. 2d 633, ¶ 44. Moreover, "[a] statute is not ambiguous merely because the parties disagree as to its meaning." *DaimlerChrysler,* 299 Wis. 2d 1, ¶ 38.

60

## A. Overview of Wisconsin's Lemon Law

■■

¶ 28. The Wisconsin Lemon Law is one of Wisconsin's preeminent consumer protection statutes. It was first adopted in 1983, 1983 Wis. Act 48, § 1, and has been revised and extended several times in the intervening years.[11] The statute is designed to assist consumers who have purchased or leased a new motor vehicle that does not function properly. *State Farm Mut. Auto Ins. Co. v. Ford Motor Co.,* 225 Wis. 2d 305, 345–46, 592 N.W.2d 201 (1999). In a dispute, the statute reduces the disparity between a motor vehicle manufacturer and a consumer by equalizing the bargaining power of the consumer. It creates standards of conduct for manufacturers of new motor vehicles and their agents as well as potent consequences for violations of those standards.

¶ 29. Subsection (1) of Wis. Stat. § 218.0171 embodies a list of definitions for the section, including "consumer," § 218.0171(1)(b); "motor vehicle," § 218.0171(1)(d); "nonconformity," § 218.0171(1)(f); and "reasonable attempt to repair," § 218.0171(1)(h). The term "consumer" includes the "purchaser of a new motor vehicle, if the motor vehicle was purchased from a motor vehicle dealer for purposes other than resale," § 218.0171(1)(b)1., and also "[a] person who leases a motor vehicle from a motor vehicle lessor under a written lease," § 218.0171(1)(b)4.[12]

---

[11] *See* 1985 Wis. Act 205; 1987 Wis. Acts 105, 169, 323, 403; 1989 Wis. Act 31; 1999 Wis. Act 31; 2001 Wis. Act 45.

[12] The following persons are also identified as consumers under Wis. Stat. § 218.0171(1)(b):

¶ 30. Subsection (2) imposes obligations upon motor vehicle manufacturers and their agents. The first obligation is the obligation of repair located in paragraph (a):

> (a) If a new motor vehicle does not conform to an applicable express warranty and the consumer [1] reports the nonconformity to the manufacturer, the motor vehicle lessor or any of the manufacturer's authorized motor vehicle dealers and [2] makes the motor vehicle available for repair [3] before the expiration of the warranty or one year after first delivery of the motor vehicle to a consumer, whichever is sooner, *the nonconformity shall be repaired.*

Wis. Stat. § 218.0171(2)(a) (emphasis added).

¶ 31. Under subsection (2)(a), the manufacturer or the manufacturer's agent has an *obligation* to repair a "nonconformity," which is defined as a "condition or defect which substantially impairs the use, value or safety of a motor vehicle." Wis. Stat. § 218.0171(1)(f).

¶ 32. "Recovery under the statute is provided in both subsection (2)(a) and (2)(b)." *Kletzien v. Ford Motor Co.,* 668 F. Supp. 1225, 1228 (E.D. Wis. 1987). Subsection (2)(a) was discussed by the court of appeals in *Vultaggio v. General Motors Corp.,* 145 Wis. 2d 874, 890–91, 429 N.W.2d 93 (Ct. App. 1988).[13] The court concluded that

---

2. A person to whom the motor vehicle is transferred for purposes other than resale, if the transfer occurs before the expiration of an express warranty applicable to the motor vehicle.

3. A person who may enforce the warranty.

The Lemon Law groups these consumers with consumers who purchase new motor vehicles under Wis. Stat. § 218.0171(1)(b)1. *See, e.g.,* Wis. Stat. § 218.0171(2)(b)2., (c), and (f).

[13] *See also Dussault v. Chrysler Corp.,* 229 Wis. 2d 296, 306–08, 600 N.W.2d 6 (Ct. App. 1999).

subsection (2)(a) creates an obligation of repair and that a consumer may bring suit for violation of that obligation under Wis. Stat. § 218.0171(7). *Id.* The court stated its decision as follows:

> Subsection (2)(a) protects the consumer from those instances *in which the consumer is unable to establish the "reasonable attempt to repair" necessary under sec. [218.0171(2)(b)]*, but can show that the dealer has not, cannot, or will not repair a nonconformity brought to its attention during the warranty period. In accord with the remedial purpose of sec. [218.0171], that consumer should still be afforded relief.

*Id.* at 891 (emphasis added). Thus, a "manufacturer who fails to repair a nonconformity reported to it pursuant to [218.0171(2)(a)] has violated its [obligation]," *id.* at 890, and the consumer may bring suit under § 218.0171(7) for the violation of that obligation, even though the consumer is not able to take advantage of "the remedies of refund or replacement" under Wis. Stat. § 218.0171(2)(b). *Id.* at 891.

¶ 33. If the remedies of refund or replacement are not available for a violation of subsection (2)(a) alone, the consumer may recover "any damages caused by a violation" of subsection (2)(a) and collect twice the amount of that "pecuniary loss, together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate." Wis. Stat. § 218.0171(7).[14]

---

[14] In its amicus curiae brief in *Vultaggio v. General Motors Corp.*, 145 Wis. 2d 874, 429 N.W.2d 93 (Ct. App. 1988), the Wisconsin Department of Justice cited a Minnesota Law Review Note on a Minnesota statutory provision similar to Wis. Stat. § 218.0171(2)(a). *See* Julie A. Vergeront, Note, *A Sour Note: A Look at the Minnesota Lemon Law*, 68 Minn. L. Rev. 846 (1984).

¶ 34. The point of this discussion is that the Wisconsin Lemon Law has been interpreted for more than 20 years as providing recovery for a violation of subsection (2)(a). If this interpretation is correct, it suggests that when damages "caused by a violation of this section" are determined under subsection (7), they should be linked to a specific violation of the statute and vary based on the facts of each case.

¶ 35. Subsections (2)(b) and (c) impose additional obligations on manufacturers and their agents:

> (b) 1. If after a reasonable attempt to repair the nonconformity is not repaired, the manufacturer shall carry out the requirement under subd. 2. or 3., whichever is appropriate.
>
> 2. At the direction of a consumer described under sub. (1)(b)1., 2. or 3., do one of the following:
>
> a. Accept return of the motor vehicle and replace the motor vehicle with a comparable new motor vehicle and refund any collateral costs.
>
> b. Accept return of the motor vehicle and refund to the consumer and to any holder of a perfected security interest in the consumer's motor vehicle, as their interest may appear, *the full purchase price* plus any sales

---

The writer of the Note suggested that a violation of the obligation to repair would result in a recovery "very similar to recovery of damages for breach of express warranty under the UCC." *Id.* at 862. The Department observed that such a recovery would be doubled in Wisconsin and reasonable attorney fees would be provided under § 218.0171(7). Nonetheless, the Department predicted that § 218.0171(2)(a) was not likely to be utilized very often because it is so much less attractive than the remedies under (2)(b). Normally, a consumer will try to qualify under subsection (2)(b).

64

tax, finance charge, amount paid by the consumer at the point of sale and collateral costs, less a reasonable allowance for use.

Wis. Stat. § 218.0171(2)(b) (emphasis added). Subdivision b. then continues on, creating a ceiling on the amount that may be deducted as "a reasonable allowance for use" from a refund of the full purchase price.[15] Reasonable allowance for use is not a factor under subdivision a. *See* Wis. Stat. § 218.0171(2)(b)2.a.

¶ 36. Plainly, subsection (2)(b)2. applies to *purchasers* and others who acquire title to a new motor vehicle. *See* Wis. Stat. § 218.0171(1)(b)1.-3. Payment obligations are created when title to a motor vehicle is transferred to a purchaser. A consumer who is a purchaser (or other person who acquires title in conformity with Wis. Stat. § 218.0171(1)(b)) *and* who satisfies other statutory requirements, such as allowing the manufacturer a "reasonable attempt to repair" the vehicle, must offer to transfer title of the vehicle back to the manufacturer. *See* Wis. Stat. § 218.0171(2)(c). Once these requirements have been met, the consumer may direct the manufacturer either to "replace the motor vehicle with a comparable new motor vehicle" or refund the full purchase price, as provided.[16] Wis. Stat.

---

[15] Under this subdivision, a reasonable allowance for use may not exceed the amount obtained by multiplying the full purchase price of the motor vehicle by a fraction, the denominator of which is 100,000 or, for a motorcycle, 20,000, and the numerator of which is the number of miles the motor vehicle was driven before the consumer first reported the nonconformity to the motor vehicle dealer.

Wis. Stat. § 218.0171(2)(b)2.b.

[16] The manufacturer is expected to "refund to the consumer and to any holder of a perfected security interest in the

§ 218.0171(2)(b)2. The manufacturer or the manufacturer's agent has 30 days to "provide the consumer with the comparable new motor vehicle or refund." Wis. Stat. § 218.0171(2)(c); *see also Estate of Riley v. Ford Motor Co.*, 2001 WI App 234, ¶¶ 8–9, 248 Wis. 2d 193, 635 N.W.2d 635.

¶ 37. A manufacturer's failure to comply with the obligations set out in subsection (2)(b)2. permits the consumer to file suit under subsection (7). *See Gosse v. Navistar Int'l Transp. Corp.*, 2000 WI App 8, ¶ 12, 232 Wis. 2d 163, 605 N.W.2d 896 (recognizing that Wis. Stat. § 218.015(7) (1997–98), now Wis. Stat. § 218.0171(7), "allows the consumer to enforce the statute by bringing legal action"). The consumer's "pecuniary loss" in subsection (7) is the loss "caused by a violation of this section." Wis. Stat. § 218.0171(7). If the consumer "prevails in such an action," the court "*shall* award . . . *twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate.*" *Id.* (emphasis added).

¶ 38. A consumer acting under subsection (2)(b)2. may receive a comparable new motor vehicle or a refund of the full purchase price, as provided, but the consumer does not get *double* his purchase price, or attorney fees, or other add-ons not contemplated by (2)(b)2., as long as the manufacturer complies timely with the demand. A manufacturer that fails to comply timely with a consumer's demand under (2)(b)2. assumes the risk of paying twice the vehicle's full purchase price and other items mentioned in (2)(b)2.b.—

consumer's motor vehicle, as their interest may appear, the full purchase price plus any sales tax, finance charge, amount paid by the consumer at the point of sale and collateral costs, less a reasonable allowance for use." Wis. Stat. § 218.0171(2)(b)2.b.

namely, "any sales tax, finance charge[s], amount paid by the consumer at the point of sale and collateral costs"—plus the consumer's reasonable attorney fees, plus other "costs" and "disbursements" and even possible "equitable relief," plus its own attorney fees, if any. *See* Wis. Stat. § 218.0171(7); *Hughes,* 197 Wis. 2d at 976–77. Considering these potent consequences for violating the statute, the manufacturer must weigh very carefully when "to hold 'em and when to fold 'em."[17]

¶ 39. Subsection (2)(b)3. applies to lessees. *See* Wis. Stat. § 218.0171(1)(b)4. "If after a reasonable attempt to repair the nonconformity is not repaired, the manufacturer shall" do the following:

> 3. a. With respect to a consumer described in sub. (1)(b)4., [namely, a lessee,] accept return of the motor vehicle, refund to the motor vehicle lessor and to any holder of a perfected security interest in the motor vehicle, as their interest may appear, the current value of the written lease and *refund to the consumer the amount the consumer paid under the written lease plus any sales tax and collateral costs, less a reasonable allowance for use.*
>
> b. Under this subdivision, the current value of the written lease equals the total amount for which that lease obligates the consumer during the period of the lease remaining after its early termination, plus the motor vehicle dealer's early termination costs and the value of the motor vehicle at the lease expiration date if the lease sets forth that value, less the motor vehicle lessor's early termination savings.

Wis. Stat. § 218.0171(2)(b) (emphasis added).

---

[17] Kenny Rogers, *The Gambler, on* The Gambler (United Artists 1978).

¶ 40. These provisions, providing explicit protections for lessees, were approved in 1987. 1987 Wis. Act 105. They are obviously separate from the provisions protecting purchasers.

B. Certified Question One

¶ 41. In its first certified question, the Seventh Circuit asked the following:

> When a consumer defined in Wisconsin Statute Section 218.0171(1)(b)4[.] brings an action pursuant to subsection (7), if that consumer, after making his Lemon Law demand, then exercises an option to purchase and buys the vehicle as provided in the lease, is the consumer then entitled to recover the amount of the purchase price?

*Tammi,* 536 F.3d at 713. For the reasons stated, we believe the answer is no.

¶ 42. A *purchaser* obtains title to a motor vehicle. A purchaser is obligated to pay for the entire motor vehicle. A purchaser will typically be required to pay the institution that provided financing for the vehicle so that the purchaser could purchase the vehicle from the manufacturer. In this scenario, the manufacturer has been fully paid and the consumer is fully obligated unless and until the contract is rescinded. Hence, a remedy that returns the vehicle to the manufacturer and requires the manufacturer to make a full refund of the consumer's purchase price, including taxes and finance charges, attempts to restore the parties to the situation they were in before the purchase. *Hughes,* 197 Wis. 2d at 976–77. A reasonable allowance for use provides a reasonable adjustment to the status quo.

68

¶ 43. In a typical *lease* situation, a financial institution—the lessor—has paid the manufacturer, and the lessor holds title to the motor vehicle during the term of the lease.[18] The lessee has financial obligations to the lessor for a specific term. Depending upon the terms of the lease, the lessee may purchase the vehicle from the lessor at or before the end of the lease, or may walk away at the end of the lease. In short, the financial obligation of the lessee is not as great as the financial obligation of a purchaser. This is why Wis. Stat. § 218.0171(2)(b)3.a. provides that the manufacturer must refund "to the motor vehicle lessor"—not the consumer lessee—"the current value of the written lease" and why the consumer lessee receives a refund of only "the amount the consumer paid under the written lease plus any sales tax and collateral costs [as defined], less a reasonable allowance for use."

¶ 44. Both the consumer and the lessor have obligations to the manufacturer that must be satisfied to receive a refund. The consumer lessee must offer to return the motor vehicle to the manufacturer. Wis. Stat. § 218.0171(2)(cm)1. The lessor must offer to transfer title to the manufacturer. Wis. Stat. § 218.0171(2)(cm)2. This latter obligation may have been formalized in the contract between the lessor and the manufacturer. Once the consumer returns the vehicle and receives his refund under (2)(b)3., the lease becomes unenforceable against the consumer. Wis. Stat. § 218.0171(2)(cm)3.

---

[18] Leases are structured so that lessees take possession of the property, but legal title remains with the lessor. *See Watertown Tractor & Equip. Co. v. Ford Motor Credit Co.*, 94 Wis. 2d 622, 632, 289 N.W.2d 288 (1980).

¶ 45. Logically, if the manufacturer violates the statute by failing to provide a refund, then the *consumer's* damages caused by the violation are equal to the consumer's *total* financial obligation under the lease, not the lease payments to date, "plus any sales tax and collateral costs, less a reasonable allowance for use." *See* Wis. Stat. § 218.0171(2)(b)3.a.; *see also Hughes*, 197 Wis. 2d at 981–84. The consumer's damages include his total financial obligation under the lease because this obligation continues when the manufacturer refuses to provide the consumer a refund. If suit is brought under subsection (7) and the consumer prevails, the consumer is entitled to "twice the amount of any pecuniary loss"—namely, the total financial obligation under the lease, plus any sales tax and collateral costs, less a reasonable allowance for use—"together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate." Wis. Stat. § 218.0171(7).

¶ 46. Put differently, when a lessee receives a refund under § 218.0171(2)(b)3., the lease becomes unenforceable against the consumer because the consumer has returned the vehicle. Wis. Stat. § 218.0171(2)(cm)3. However, when a lessee receives damages under § 218.0171(7), the lessee is not discharged from any obligation to the lessor under the lease. If the lease has not expired, the lessee must return the vehicle to the manufacturer, who has paid damages, and must settle his obligation with the lessor because the lessor will no longer be able to rely on the vehicle as security. The benefit to the lessee is that his total financial obligation

70

under the lease has been compensated and his pecuniary loss has been doubled.[19]

¶ 47. The facts in this case present an additional wrinkle. In the midst of the dispute over the manufacturer's obligations to the lessee, the lessee opted to become a purchaser—opted to change his status. Tammi asserts that he was entitled to purchase the vehicle under the terms of the lease, and he contends that he is not only entitled to a refund of his reduced lease obligation but also a refund of his entire purchase price. Both, he contends, are measures of his "pecuniary loss," which should be doubled by the court as a matter of law.

¶ 48. This is not how we read the statute. A consumer may be *entitled* to purchase the vehicle under his lease, but he is not *required* to purchase the vehicle. An option is not the same as an obligation. *See, e.g., Clear View Estates, Inc. v. Veitch,* 67 Wis. 2d 372, 377, 227 N.W.2d 84 (1975) ("The distinguishing feature of an option is that it *does not bind the purchaser* to purchase or exercise the option.") (emphasis added); *see also Black's Law Dictionary* 1121 (7th ed. 1999) (defining "option" as "[a] contract made to keep an offer open for a specified period, so that the offeror cannot revoke the offer during that period"). If a consumer has paid or

___

[19] Doubling the lessee's *total* financial obligation under the lease eliminates the disparities that would occur if the "pecuniary loss" were measured by the amount of lease payments actually made, on a case-by-case basis, depending upon when suit was filed and concluded during the course of a lease. The manufacturer is ultimately responsible for the current value of the written lease. The consumer should be credited with the full lease obligation because he assumes the burden of resolving the matter in court.

would pay extra under the lease to secure the right to purchase, that extra cost is built into the refund covering the consumer's total lease obligation. Thus, paying the consumer his entire *lease* obligation, plus any sales tax and collateral costs, less a reasonable allowance for use, should relieve the consumer of any financial obligation and restore the consumer to his prior position. *See Hughes,* 197 Wis. 2d at 981–84. Doubling that amount compensates the consumer for his trouble. *See id.* at 984–86. Paying his reasonable attorney fees makes it all possible. *See* Wis. Stat. § 218.0171(7).

¶ 49. The consumer also may keep the vehicle when the consumer has opted to purchase the vehicle.

¶ 50. Although we believe this policy is clear, we base our conclusion on the statutory language. Subsection (7) provides that "a consumer may bring an action to recover for any damages *caused by a violation of this section.*" Wis. Stat. § 218.0171(7) (emphasis added). The manufacturer's violation of the statute forced Tammi to continue paying his entire lease obligation ($69,327.10). However, it did not cause him to buy the car. That was a voluntary decision, not a cost attributable to the manufacturer's violation of the statute.

¶ 51. Subsection (7) provides that "[t]he court shall award a consumer who prevails in such an action twice the amount of any pecuniary loss." Wis. Stat. § 218.0171(7). We fail to see how a consumer's voluntary expenditure of money—beyond any obligation in his lease and sales tax and collateral costs—can fairly be described as part of a "pecuniary loss" *caused* by the manufacturer that the statute requires a court to double.[20]

---

[20] If the lessee has voluntarily spent money to accessorize the leased vehicle and then must give the accessorized vehicle

72

¶ 52. In this case, the district court submitted the question of damages to the jury. The jury awarded damages of $26,600.00. The court modified these damages. The court was required to have some basis in law for modifying the verdict. The basis in law is found in the statute. Subsection (7) cannot be viewed as wholly separate from the rest of the statute.[21] The subsections of the statute must be reconciled.

## C. Certified Question Four

¶ 53. The fourth certified question reads as follows: "Is a damage award under subsection (7) subject to a reduction for reasonable use of the vehicle?" *Tammi,* 536 F.3d at 714.

¶ 54. As noted, Wis. Stat. § 218.0171(7) cannot be viewed as wholly separate from the rest of the statute. It is very clear from the statute that a purchaser-consumer who demands a *refund* of the full purchase price is subject to "a reasonable allowance for use." Wis. Stat. § 218.0171(2)(b)2.b. It is equally clear that a lessee-consumer who demands a *refund* of "the amount

---

back to the manufacturer upon refund of the lease obligation, the lessee may be able to seek reimbursement of these costs. Whether such costs would be included in the lessee's "pecuniary loss" under the statute would depend on the facts.

[21] Contrary language is found in *Estate of Riley v. Ford Motor Co.,* 2001 WI App 234, ¶ 10, 248 Wis. 2d 193, 635 N.W.2d 635: "Wisconsin Stat. § [218.0171(2)(b)3.a. and b.] do not apply when a Lemon Law action is filed in the trial court." The court of appeals reached the correct determination when it rejected the proposition that the lessee's loss was "the current value of the written lease." *Id.* However, we believe the correct damage amount was essentially the lessee's total financial obligation under the lease.

the consumer paid under the written lease" is also subject to "a reasonable allowance for use." Wis. Stat. § 218.0171(2)(b)3.a.

¶ 55. Under subsection (7), a lessee-consumer is entitled to a refund of his entire lease obligation. In a normal situation, we see no reason in equity or in the statute to disregard "a reasonable allowance for use" to reduce the amounts used in determining "pecuniary loss." We note that "reasonable allowance for use" is not a precise term. The ceilings provided in the statute are not inflexible. *See* Wis. Stat. § 218.0171(2)(b)2.b. and (2)(b)3.c.

¶ 56. The statute provides ample penalties for violation—namely, a doubling of the consumer's "pecuniary loss, together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate." Wis. Stat. § 218.0171(7). Reasonable attorney fees may exceed pecuniary loss. Disregard of "a reasonable allowance for use" is not a penalty contemplated by the statute and is not appropriate in the normal situation.

¶ 57. Here the consumer is an attorney who represented himself and did not ask for attorney fees. We were not asked to address this subject.

## IV. CONCLUSION

¶ 58. The purpose of the Lemon Law is to ensure that manufacturers, who almost always have superior bargaining power in consumer transactions, comply speedily with its requirements to make the consumer whole. *See Hughes,* 197 Wis. 2d at 982–86; *Church v. Chrysler Corp.,* 221 Wis. 2d 460, 468, 585 N.W.2d 685 (Ct. App. 1998). Because the Wisconsin Lemon Law is a remedial statute, its provisions "should be liberally

construed to suppress the mischief and advance the remedy that the statute intended to afford." *Hughes,* 197 Wis. 2d at 978.

¶ 59. There are, however, limitations to the penalties that may be imposed for a manufacturer's violations. Recognizing those limitations will not undermine the effectiveness of an important consumer protection statute.

¶ 60. When a consumer who is leasing a motor vehicle brings an action against the manufacturer of the vehicle pursuant to subsection (7) of Wis. Stat. § 218.0171, and then exercises his option to purchase the vehicle under the terms of the lease, the consumer is not entitled to damages for the price of his voluntary purchase because his purchase was not "caused" by any violation of the statute by the manufacturer. *See* Wis. Stat. § 218.0171(7).

¶ 61. Furthermore, the plain language of the statute makes clear that a consumer's refund under Wis. Stat. § 218.0171(2)(b)2.b. or 3.a. is subject to a reasonable allowance for use. Because we read subsection (7) in conjunction with the rest of the statute, we conclude that the amount of "pecuniary loss" under Wis. Stat. § 218.0171(7) must incorporate a reasonable allowance for use before the pecuniary loss is doubled.

¶ 62. *By the Court.*—Certified questions of law answered, in part, and the cause is remanded to the United States Court of Appeals for the Seventh Circuit for further proceedings.