Steven T. KILIAN,
Plaintiff-Appellant-Cross-Respondent-Petitioner,

v.

MERCEDES-BENZ USA, LLC and
Daimler Chrysler Financial Services Americas,
LLC d/b/a Mercedes-Benz Financial,
Defendants-Respondents-Cross-Appellants.

Supreme Court

*No. 2009AP538. Oral argument January 5, 2011.
—Decided July 12, 2011.*

2011 WI 65

(Also reported in 799 N.W.2d 815.)

568

For the plaintiff-appellant-cross-respondent-petitioner there were briefs and oral argument by *Vincent P. Megna* and *Timothy J. Aiken, Aiken & Scoptur, S.C.*

For the defendants-respondents-cross-appellants there was a brief by *Patrick L. Wells* and *Owen Armstrong, Von Briesen & Roper, S.C.* and oral argument by *Patrick L. Wells.*

¶ 1. MICHAEL J. GABLEMAN, J. Steven Kilian seeks review of an unpublished decision of the court of appeals[1] that affirmed the order of the circuit court for Waukesha County, the Honorable Ralph M. Ramirez presiding, granting summary judgment to defendants Mercedes-Benz USA, LLC, and Daimler Chrysler Financial Services Americas, LLC, d/b/a Mercedes-Benz Financial.

¶ 2. Kilian leased a Mercedes-Benz vehicle in 2006. Mercedes-Benz USA manufactured the vehicle and Mercedes-Benz Financial provided the lease financing. In the first year of the lease, the car required repairs on seven occasions and was out of service for an aggregate of approximately forty days. Kilian returned the car to Mercedes-Benz USA and sought a refund under Wisconsin's Lemon Law.[2] Mercedes-Benz USA accepted the returned vehicle and refunded $20,847.87 to Kilian. However, Mercedes-Benz USA did not immediately pay off the lease with Mercedes-Benz Financial and, as a result of this failure, Mercedes-Benz Financial commenced efforts to obtain payment on the lease from Kilian even though he had returned the car to Mercedes-Benz USA and had received a refund from them.

---

[1] *Kilian v. Mercedes-Benz USA, LLC,* No. 2009AP538, unpublished slip op. (Wis. Ct. App. Mar. 24, 2010).

[2] *See* Wis. Stat. § 218.0171 (2007–08). "Wisconsin's Lemon Law is a remedial statute enacted to protect buyers [and lessees] of new [motor] vehicles if they experience certain types of problems with their purchases. Vehicles with problems covered under the statute are known as 'lemons.'" *Tammi v. Porsche Cars N. Am., Inc.,* 2009 WI 83, ¶ 1 n.2, 320 Wis. 2d 45, 768 N.W.2d 783 (internal citations omitted). All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

¶ 3. Kilian retained counsel to assist in stopping Mercedes-Benz Financial's collection efforts. Kilian's counsel informed Mercedes-Benz Financial that the car had been returned to, and Kilian had received a refund from, Mercedes-Benz USA. Mercedes-Benz Financial does not dispute that it received actual notice of these facts. Kilian's counsel also informed Mercedes-Benz Financial that no person may enforce a lease after a consumer has received a refund from the manufacturer under Lemon Law § 218.0171(2)(cm)3. Despite the assurances it gave to Kilian's counsel, Mercedes-Benz Financial continued its enforcement actions. Kilian filed suit under Lemon Law subsection (7) in order to stop enforcement of the lease.

¶ 4. We conclude that Kilian may maintain an action for equitable relief under Lemon Law subsection (7). Further, we hold that Mercedes-Benz Financial's enforcement of the lease after it was informed by Kilian's attorney that Kilian had received a refund, and after it assured Kilian that collections efforts would cease, violated the Lemon Law. We also conclude that Kilian prevailed in his action when Mercedes-Benz Financial voluntarily ceased enforcement of the lease after Kilian filed suit. We conclude that Kilian, as the prevailing party, is entitled to his costs, disbursements, and reasonable attorney fees, but that Kilian is not entitled to an award for pecuniary loss. As a result, we reverse the court of appeals and remand the cause to the circuit court for a determination of the appropriate amount of Kilian's costs, disbursements, and reasonable attorney fees.

## I. BACKGROUND

¶ 5. On March 21, 2006, Steven Kilian signed a thirty-nine month motor vehicle lease agreement with

572

Concours Motors, Inc. Concours Motors is an authorized dealer for Mercedes-Benz USA, the vehicle's manufacturer, and Mercedes-Benz Financial, the lease financing company.[3]

¶ 6. During the first year of the lease, Kilian's vehicle required repairs on seven occasions and was out of service for an aggregate of approximately forty days. Because of the number of problems with his new car, Kilian decided to assert his rights under Wisconsin's Lemon Law.[4] On April 11, 2007, Kilian offered to return the car to the manufacturer, Mercedes-Benz USA, and concurrently demanded a refund in accordance with Lemon Law § 218.0171(2)(b).

¶ 7. On May 10, 2007, Kilian returned the car to Concours Motors, Inc. On the same day, Kilian received a $20,847.87 refund.[5] Kilian then stopped making payments to Mercedes-Benz Financial. He did so because he believed that returning the vehicle to Mercedes-Benz USA had satisfied his remaining obligations under the lease.

¶ 8. The dispute leading to this case began when Mercedes-Benz USA (1) failed to pay off Kilian's lease

[3] Mercedes-Benz Financial was described in the record as the "financing arm" of Mercedes-Benz USA. The record does not provide a description of the precise corporate relationship between the companies.

[4] See Wis. Stat. § 218.0171.

[5] See Wis. Stat. § 218.0171(2)(b)3. This amount equaled the sum of Kilian's lease payments and other collateral costs from March 2006 through April 2007, less an allowance for reasonable use. Kilian made fourteen payments of $1,826.12, totaling $25,565.68. After adjusting the refund pursuant to Wis. Stat. § 218.0171(2)(b)3, including a ($4,050.99) adjustment for Kilian's reasonable use of the vehicle, the final refund totaled $20,847.87.

573

with Mercedes-Benz Financial and (2) failed to notify Mercedes-Benz Financial that the vehicle had been returned under the Lemon Law. Mercedes-Benz Financial, unaware of these developments, began contacting Kilian to collect on what it viewed as unpaid lease installments, beginning with the installment due May 20. These contacts included numerous phone calls and letters demanding payment. Kilian repeatedly informed Mercedes-Benz Financial that the car had been returned under the Lemon Law. Nonetheless, Mercedes-Benz Financial continued contacting Kilian about the payments that it considered Kilian to have "missed." By June, Kilian retained counsel in order to stop Mercedes-Benz Financial's collection efforts.

¶ 9. On June 15, 2007, Attorney Megna wrote a letter on Kilian's behalf informing Mercedes-Benz Financial that the vehicle had been returned to Mercedes-Benz USA, that Kilian had received a refund under the Lemon Law, and that therefore Lemon Law § 218.0171(2)(cm)3. precluded enforcement of the lease. On June 20, Mercedes-Benz Financial responded with a letter from its Executive Referral Manager, Glen Bieler. In the letter, Bieler acknowledged receipt of Attorney Megna's June 15 letter and assured Attorney Megna that Mercedes-Benz Financial would refrain from further contact with Kilian regarding the lease.

¶ 10. After receiving Bieler's letter, Attorney Megna contacted the collections department of Mercedes-Benz Financial and was advised that the lease account remained open and active. On June 26, Attorney Megna sent a second letter to Mercedes-Benz Financial. In the second letter, Attorney Megna inquired as to whether the lease had in fact been cancelled by Mercedes-Benz Financial.

¶ 11. On July 1, 2007, Kilian received a "Federal Legal Notice" from Mercedes-Benz Financial. This document warned Kilian of consequences he could face after his payments became thirty or more days past due. Specifically, the notice cautioned: "We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report."

¶ 12. The following day, July 2, Kilian received an account statement reflecting a total amount due on the lease of $5,478.36. This amount reflected the aggregate of three months of lease payments, presumably for the months of May, June, and July. The statement listed July 21 as the payment due date.

¶ 13. On July 10, 2007, Kilian filed a complaint in the circuit court for Waukesha County naming both Mercedes-Benz USA and Mercedes-Benz Financial as defendants. Kilian alleged that Mercedes-Benz Financial violated Wisconsin's Lemon Law, specifically Wis. Stat. § 218.0171(2)(cm)3., by continuing to enforce the lease after the vehicle was returned and he had received a refund from the manufacturer.[6] Kilian's claim for relief included a demand for twice the amount of all pecuniary losses, rescission of the lease, prejudgment interest, attorney fees, costs, and disbursements.

---

[6] Kilian also alleged that Mercedes-Benz USA violated Lemon Law § 218.0171(2)(b)3.a. by failing to pay off the lease with Mercedes-Benz Financial. On December 15, 2008, the circuit court granted Mercedes-Benz USA's motion to dismiss this cause of action, thus dismissing Mercedes-Benz USA as a defendant. The court of appeals affirmed the dismissal. Kilian did not petition this court for review on this issue. We therefore express no opinion concerning Kilian's Wis. Stat. § 218.0171(2)(b)3.a. cause of action.

¶ 14. On August 29, 2007, while Kilian's action was pending in the circuit court, Mercedes-Benz USA sent a check for $95,252.37 to Mercedes-Benz Financial in order to pay off the lease. After this point, Mercedes-Benz Financial considered the account closed and the lease cancelled because the lease had no remaining balance due.

¶ 15. In an order dated January 28, 2009, the circuit court addressed Mercedes-Benz Financial's motion for summary judgment. The circuit court found no genuine issue of material fact related to Kilian's Lemon Law claim. Further, the circuit court found that Kilian did not suffer a pecuniary loss when Mercedes-Benz Financial continued to enforce the lease after the vehicle was returned. It grounded this conclusion on the finding that Kilian did not make any lease payments to Mercedes-Benz Financial *after* returning the car. As a result, the circuit court granted summary judgment in favor of Mercedes-Benz Financial.

¶ 16. The court of appeals, in an unpublished decision, affirmed the circuit court.[7] The court of appeals first held that claims for attorney fees, defamation, and inconvenience did not qualify as pecuniary loss, and that a claim for pecuniary loss was required in order to recover under Lemon Law subsection (7). *Kilian v. Mercedes-Benz USA, LLC,* No. 2009AP538, unpublished slip op., ¶¶ 10–13 (Wis. Ct. App. Mar. 24, 2010). Second, the court of appeals held that Kilian did not seek any type of equitable relief in his complaint. *Id.,* ¶ 14. Consequently, the court of appeals concluded that the complaint against Mercedes-Benz USA was properly dismissed. *Id.*

---

[7] *Kilian,* No. 2009AP538, unpublished slip op. (Wis. Ct. App. Mar. 24, 2010).

¶ 17. We granted review and now reverse the decision of the court of appeals.

## II. STANDARD OF REVIEW

¶ 18. This case comes before us on a motion for summary judgment. "We review the grant of a motion for summary judgment de novo, and apply the methodology specified in Wis. Stat. § 802.08." *Borek Cranberry Marsh, Inc. v. Jackson County,* 2010 WI 95, ¶ 11, 328 Wis. 2d 613, 785 N.W.2d 615. "That is, we determine whether there is any genuine issue as to any material fact, and if not, which party is entitled to judgment as a matter of law." *Id.*

¶ 19. This case also involves the interpretation of Wisconsin's Lemon Law, found in Wis. Stat. § 218.0171. "The interpretation of a statute is a question of law that we review de novo." *Hocking v. City of Dodgeville,* 2010 WI 59, ¶ 17, 326 Wis. 2d 155, 785 N.W.2d 398.

## III. DISCUSSION

¶ 20. In 1983, the legislature enacted Wisconsin's Lemon Law, codified in Wis. Stat. § 218.0171.[8] It has since become "one of Wisconsin's preeminent consumer protection statutes." *Tammi v. Porsche Cars N. Am., Inc.,* 2009 WI 83, ¶ 28, 320 Wis. 2d 45, 768 N.W.2d 783. The Lemon Law serves the goal of consumer protection by creating "standards of conduct for manufacturers of new motor vehicles . . . as well as potent consequences for violations of those standards." *Id.* In addition, it

---

[8] *See* 1983 Wis. Act 48, § 1.

broadly prohibits *any* person from enforcing a lease after a refund is received by the consumer—regardless of whether that person is a manufacturer, lease financing company, or a dealer. § 218.0171(2)(cm)3.

¶ 21. A consumer who leases a vehicle may request a refund under the Lemon Law if warranty nonconformities cause the vehicle to be out of service for an aggregate of thirty or more days during the first year of the lease. *See* Wis. Stat. § 218.0171(1)(b)4., (1)(h)2., (2)(b)3. Assuming the statutory criteria are met, the manufacturer must provide the consumer a refund within thirty days of the consumer's offer to return the vehicle. § 218.0171(2)(c). The refund is equal to "the amount the consumer paid under the written lease plus any sales tax and collateral costs, less a reasonable allowance for use." § 218.0171(2)(b)3.a. Once the consumer has received his or her refund, "[n]o person may enforce the lease against the consumer." § 218.0171(2)(cm)3.

¶ 22. Consumers aggrieved by a violation of the Lemon Law may maintain an action under Wis. Stat. § 218.0171(7). Subsection (7) states:

> In addition to pursuing any other remedy, a consumer may bring an action to recover for any damages caused by a violation of this section. The court shall award a consumer who prevails in such an action twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate.

*Id.*[9]

---

[9] The Lemon Law is clear as to its intent to hold automobile manufacturers accountable, and to provide remedies to those consumers who have incurred damages as a result of conduct which the statute proscribes. While the Lemon Law's general

578

¶ 23. Applying subsection (7) to the instant case requires us to consider four issues: (1) whether Kilian may maintain a cause of action; (2) whether Mercedes-Benz Financial violated the Lemon Law; (3) whether Kilian prevailed in his action; and (4) whether recovery of pecuniary loss, costs, disbursements, reasonable attorney fees, and other equitable relief is appropriate in this case. *See* Wis. Stat. § 218.0171(7). We consider these four issues in turn.

### A. Kilian May Maintain a Cause of Action Under Lemon Law Subsection (7)

¶ 24. We first must determine whether Kilian may maintain an action under Lemon Law subsection (7). The first sentence of subsection (7) provides that "[i]n addition to pursuing any other remedy, a consumer may maintain an action to recover for any damages caused by a violation of this section." Wis. Stat. § 218.0171(7).

¶ 25. The parties agree that this case turns on our interpretation of the word "damages." Mercedes-Benz Financial argues that Kilian could maintain an action only if his damages included pecuniary loss. According to its theory, since Kilian suffered no pecuniary loss, he could not maintain an action under Lemon Law subsec-

---

purpose is clear, the particular terms and provisions contained in the statute are sometimes opaque. In subsection (7), for example, no definition is provided for the term "damages." And while § 218.0171(2)(cm)1. prescribes specific actions a manufacturer must take when issuing the consumer a refund, § 218.0171(2)(cm)3., by contrast, makes only the blanket statement that "no person" may enforce a lease after a refund has been issued. This case centers on these ambiguities, which we intend to clarify today in a fashion consistent with the legislature's intent.

tion (7). Kilian, by contrast, argues that the word "damages" encompasses more than just pecuniary loss.[10] According to his theory, because he sought equitable relief, he could properly maintain an action under Lemon Law subsection (7).

¶ 26. These two theories on the proper interpretation of the word "damages" address one underlying issue: whether it is proper for Kilian to maintain an action under the Lemon Law. We therefore now consider whether Kilian may maintain his action under Lemon Law subsection (7)'s first sentence.

■

¶ 27. The court of appeals held that a consumer must suffer a pecuniary loss in order to maintain an action under Lemon Law subsection (7). *Kilian*, No. 2009AP538, ¶¶ 9–10, unpublished slip op. (Wis. Ct. App. Mar. 24, 2010). Because Kilian suffered no pecu-

---

[10] Kilian argued that he suffered defamation damages as a result of Mercedes-Benz Financial's negative reports to credit agencies, and that those damages were sufficient to bring an action under Lemon Law subsection (7). We do not agree. Lemon Law subsection (7) claims do not include personal injury damages. *Gosse v. Navistar Int'l Transp. Corp.*, 2000 WI App 8, ¶ 14, 232 Wis. 2d 163, 605 N.W.2d 896 (holding that a consumer was not entitled to recover personal injury damages under the Lemon Law). Nothing precluded Kilian from alleging defamation as an independent cause of action in his complaint. No evidence indicates the legislature intended to include such claims under the Lemon Law. Therefore, we conclude that Kilian may not bootstrap a defamation claim to his Lemon Law subsection (7) claim. For the purposes of this decision, we also assume, without deciding, that pre-suit attorney fees and unspecified "inconvenience" damages do not qualify as pecuniary loss under subsection (7).

niary loss,[11] the court of appeals rejected his claim. We conclude that the holding of the court of appeals is not consistent with the plain language of subsection (7), prior case law, and accepted principles of statutory interpretation.

¶ 28. First, the court of appeals decision overlooks the plain language of subsection (7)'s introductory clause. The broad language of the introductory clause allows Kilian, as a consumer, "to pursu[e] *any . . . remedy.*" Wis. Stat. § 218.0171(7) (emphasis added). A remedy is defined as "[t]he means of enforcing a right or preventing or redressing a wrong; *legal or equitable* relief." *Burbank Grease Servs., LLC v. Sokolowski,* 2006 WI 103, ¶ 23, 294 Wis. 2d 274, 717 N.W.2d 781 (citation omitted) (emphasis added). Further, subsection (7)'s second sentence explicitly permits a court to award a prevailing party "any equitable relief the court determines appropriate." § 218.0171(7). Therefore, the plain language of subsection (7) supports our conclusion that Kilian may maintain an action for equitable relief under subsection (7).

¶ 29. Second, the only appellate decision interpreting identical statutory language permits consumers to seek equitable relief. *See Cuellar v. Ford Motor Co.,* 2006 WI App 210, ¶ 22, 296 Wis. 2d 545, 723 N.W.2d 747. In *Cuellar,* a consumer brought an action under the Motor Vehicle Adjustment Programs Act (MVAPA) against the Ford Motor Company. *Id.,* ¶ 1. Specifically, the consumer (Cuellar) brought his action under MVAPA subsection (4), Wis. Stat. § 218.0172(4), a statute which contains language identical to Lemon Law subsection (7). *Com-*

---

[11] In Part III.D.1. of this opinion, we explain that Kilian suffered no pecuniary loss because he had already received a properly calculated refund from Mercedes-Benz Financial.

*pare* § 218.0172(4), *with* § 218.0171(7). The court of appeals held that Cuellar did not have to show pecuniary loss in order to maintain an action under MVAPA subsection (4), noting that "the plain language of the statute provides that the court 'shall award . . . any equitable relief the court determines appropriate.'" *Cuellar,* 296 Wis. 2d 545, ¶ 22. Thus, *Cuellar,* the only appellate decision interpreting statutory language identical to Lemon Law subsection (7), supports our conclusion that pecuniary loss is not required for a consumer to maintain an action under the Lemon Law.

¶ 30. Third, the absence of any legislative amendment to MVAPA supports the conclusion that *Cuellar's* interpretation of MVAPA subsection (4), Wis. Stat. § 218.0172(4), is consistent with the legislature's intent. *See Zimmerman v. Wisconsin Electric Power Co.,* 38 Wis. 2d 626, 633–34, 157 N.W.2d 648 (1968) ("The legislature is presumed to know that in absence of its changing the law, the construction put upon it by the courts will remain unchanged . . . . Thus, when the legislature acquiesces or refuses to change the law, it has acknowledged that the court's interpretation of legislative intent is correct."). In the five years since *Cuellar,* the legislature has made no modifications to MVAPA subsection (4) or any other identical statute, such as Lemon Law subsection (7).[12] Therefore, we

---

[12] "Legislative failure to act is ordinarily weak evidence of legislative intention to acquiesce in or countenance a judicial or executive branch interpretation. . . . Under proper circumstances, however, inaction by the legislature may be evidence of legislative intent." *Schill v. Wisconsin Rapids School Dist.,* 2010 WI 86, ¶ 124, 327 Wis. 2d 572, 786 N.W.2d 177. In the instant case, we conclude the "presumption of tacit adoption and ratification" is relevant insofar as it is consistent with the plain

presume that the legislature has accepted the court of appeals' interpretation of this language as permitting consumers to maintain an action seeking equitable relief.

¶ 31. In light of subsection (7)'s broad introductory clause, the court of appeals decision in *Cuellar,* and the legislature's tacit acceptance of *Cuellar*'s holding, we conclude that Kilian may maintain an action under the Lemon Law for equitable relief without alleging any pecuniary loss.[13]

B. Mercedes-Benz Financial Violated the Lemon Law

¶ 32. We have concluded that Kilian may bring suit under the Lemon Law for equitable relief. In order to obtain relief under Lemon Law subsection (7), how-

---

language contained in subsection (7)'s broad introductory clause. *See Green Bay Packaging, Inc. v. Dep't of Industry, Labor and Human Relations,* 72 Wis. 2d 26, 35, 240 N.W.2d 422 (1976).

[13] While we do not rely on legislative history when a statute is unambiguous on its face, this court, on occasion, will "consult legislative history to show how that history supports our interpretation of a statute otherwise clear on its face." *Seider v. O'Connell,* 2000 WI 76, ¶ 52, 236 Wis. 2d 211, 612 N.W.2d 659.

In the instant case, the legislative history of the Lemon Law supports our interpretation of the term "damages." The legislative drafting notes from 1983 show that the term "pecuniary loss" was originally used in place of the term "damages." Subsection (7) initially provided that "any person suffering a pecuniary loss because of a violation of this section may bring a civil action . . . ." However, the final bill was amended to state that "a consumer damaged by a violation of this section may bring an action . . . ." *See* LRBs0091/1; WLCS:92/1 (March 4, 1983). This amendment suggests the legislature intended to provide a broader range of remedies under this provision than merely pecuniary loss.

ever, Kilian must prove that Mercedes-Benz Financial violated some part of the Lemon Law. Wis. Stat. § 218.0171(7).

¶ 33. Kilian argues that Mercedes-Benz Financial violated Lemon Law § 218.0171(2)(cm)3. This claim highlights an inherent tension in the statute because Mercedes-Benz Financial is the lease financing company, and not the manufacturer. The Lemon Law is primarily focused on imposing duties on manufacturers. However, it just as clearly precludes "[any] person" from enforcing a lease once the manufacturer has issued a refund. § 218.0171(2)(cm)3. ("No person may enforce the lease against the consumer . . . .").

█

¶ 34. We agree with Kilian that a lender who continues to enforce a lease after the consumer returns the vehicle and receives a refund from the manufacturer may be held to violate the plain language of the statute prohibiting "[any] person" from doing so.[14] We now turn to an examination of the specific conduct undertaken by Mercedes-Benz Financial after Kilian received his refund.

---

[14] The Lemon Law imposes no duty on the manufacturer to inform the lease financing company of a vehicle's return under the Lemon Law. This absence is disconcerting as Justice Roggensack discusses in her thoughtful concurrence. Without such a duty, a consumer may incur damages as a result of a manufacturer's failure to provide such notice. We leave open the question of whether the Lemon Law imposes a duty of good faith on a manufacturer which would require it to give notice of the refund to a lease financing company. We do not reach this question because Kilian has not alleged that Mercedes-Benz USA acted in bad faith when it failed to inform Mercedes-Benz Financial of the refund.

¶ 35. On May 10, 2007, Kilian returned the leased vehicle pursuant to the Lemon Law and that same day received from the manufacturer a $20,847.87 refund. It is undisputed that the collections department of Mercedes-Benz Financial contacted Kilian and attempted to obtain payment on the lease after May 10.[15]

¶ 36. Moreover, in his June 15 letter to Mercedes-Benz Financial, Kilian's attorney informed Mercedes-Benz Financial that Kilian had returned the vehicle to the manufacturer and had obtained a refund. In his June 20 reply, Bieler acknowledged receipt of the June 15 letter and assured Kilian's attorney that Mercedes-Benz Financial would stop contacting Kilian. However, on July 1, Kilian received a document entitled "Federal Legal Notice" from Mercedes-Benz Financial and, on July 2, Kilian received a bill for three months of payments from Mercedes-Benz Financial. The notice threatened that Mercedes-Benz Financial "may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report." The bill was obviously a demand for payment.

■

¶ 37. Mercedes-Benz Financial attempts to defend its enforcement of the lease by arguing that there

---

[15] Kilian asserts that he received daily phone calls from Mercedes-Benz Financial collections employees. Bieler (Mercedes-Benz Financial's agent) stated in his deposition "I don't know for sure if it's daily. I really couldn't answer that." The precise extent of Mercedes-Benz Financial's early enforcement efforts is not discernible from the record. It is, however, undisputed that Kilian received at least two documents attempting to enforce the lease after Mercedes-Benz Financial (1) had been explicitly informed by Attorney Megna that Kilian had received a refund under the Lemon Law and (2) had assured Kilian that its collection efforts would cease.

was "no way" for it to stop these notices from being mailed by its automated collections system. In essence, Mercedes-Benz Financial alleges that it made an innocent mistake and therefore cannot be penalized under the Lemon Law. This argument ignores the fact that the Lemon Law unambiguously prohibits enforcement of the lease following the issuance of a refund to the consumer, and nothing in its plain language provides an exception for accidental enforcement of a lease. Moreover, even if there were a "mistaken enforcement" exception, Mercedes-Benz Financial would not be entitled to it in light of the letter from Kilian's attorney informing Mercedes-Benz Financial of Kilian's receipt of a Lemon Law refund, the assurances by Bieler that further contacts with Kilian would cease, and Kilian's representations for over a month to Mercedes-Benz Financial collections employees that he had received a refund under the Lemon Law.

¶ 38. Therefore, in light of (1) Mercedes-Benz Financial's repeated efforts to enforce the lease for two months after Kilian received his refund, (2) the notice of the refund that Mercedes-Benz Financial received from both Kilian and his attorney, and (3) Bieler's assurances that Mercedes-Benz Financial's collection efforts would cease, we hold that Mercedes-Benz Financial violated Lemon Law § 218.0171(2)(cm)3.

C. Kilian Prevailed in His Lemon Law Action

¶ 39. We have concluded that Kilian may appropriately maintain a cause of action under Lemon Law subsection (7) seeking equitable relief for Mercedes-Benz Financial's violation of Wis. Stat. § 218.0171(2)(cm)3. If Kilian prevails in "such an action", he would be entitled

to certain enumerated relief. Wis. Stat. § 218.0171(7) Specifically, he would be entitled to "twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate." *Id.*

¶ 40. We determine the precise nature of Kilian's claim for relief by examining its substance and not merely the label he affixed to it. We do so in order to determine whether Kilian received the relief he actually sought. We consider two issues in this regard: (1) whether we are limited by the fact that Kilian sought only one type of equitable relief, and (2) whether Kilian prevailed in his action seeking equitable relief.

■

¶ 41. First, we consider whether we are limited by the fact that the only equitable remedy Kilian sought in his complaint was rescission of his lease with Mercedes-Benz Financial. Rescission is an equitable remedy, the effect of which is to "restore the parties to the position they would have occupied if no contract had ever been made between them." *Seidling v. Unichem, Inc.,* 52 Wis. 2d 552, 557–58, 191 N.W.2d 205 (1971). We are aware of the label Kilian assigned to his requested relief, i.e. "rescission." However, upon review of the substance of his request, we determine that, in actuality, Kilian sought to prevent Mercedes-Benz Financial from further enforcement of the lease in violation of Lemon Law § 218.0171(2)(cm)(3). The equitable remedy Kilian actually sought could be more appropriately labeled an action seeking an injunction, that is, an order commanding or preventing an action. *Black's Law Dictionary* 788 (7th ed. 1999).

■

¶ 42. Regardless of the precise label Kilian affixed to his request, it is well settled that a court sitting in

equity has the "power to enlarge the scope of the ordinary forms of relief, and even to contrive new ones adapted to new circumstances." *Mulder v. Mittelstadt,* 120 Wis. 2d 103, 115, 352 N.W.2d 223 (Ct. App. 1984) (internal quotation omitted). Therefore, we are not limited by the fact that Kilian labeled his action one for rescission, nor are we required to determine whether he sought an injunction. Rather, we construe Kilian's action as one seeking cessation of Mercedes-Benz Financial's efforts to enforce the lease after Kilian received a refund from Mereceds-Benz USA.

¶ 43. We now turn to consideration of the second issue, whether Kilian prevailed in receiving the equitable remedy he actually sought. In a typical case, it is clear which party prevaïls because that party will have a final judgment granted in its favor. Obtaining final judgment is not, however, the only way a party may earn the status of a prevailing party. While Mercedes-Benz Financial had provided assurances to Kilian prior to the filing of his lawsuit that its enforcement efforts would stop, it was only after Kilian commenced his lawsuit that Mercedes-Benz Financial ceased its efforts to enforce the lease.

■■

¶ 44. In order to prevail in a consumer protection action, it is sufficient that a consumer satisfy one of two tests. We address each of these two tests in turn. The first test requires that the consumer show (1) a causal link between his or her lawsuit and the relief obtained, and (2) that the defendant's conduct in response to the lawsuit was required by law. *Cmty. Credit Plan, Inc. v. Johnson,* 228 Wis. 2d 30, 35, 596 N.W.2d 799 (1999) (referring to this test as the "catalyst test").

¶ 45. A direct causal link exists between Kilian's lawsuit and the equitable relief he obtained—that is, cessation of the enforcement of the lease by Mercedes-Benz Financial after he received a refund from Mercedes-Benz USA. It was, after all, Kilian's lawsuit which compelled Mercedes-Benz Financial to recognize its error and stop its efforts to enforce the lease.[16] Second, Mercedes-Benz Financial's enforcement of the lease was prohibited by the Lemon Law, and so, cessation of these enforcement efforts was required by law. As previously discussed, *"no person"* may enforce a lease after a refund is received by a consumer pursuant to the Lemon Law. Wis. Stat. § 218.0171(2)(cm)3. Mercedes-Benz Financial was therefore required by law to grant Kilian the relief he sought in his lawsuit. We conclude that Kilian has satisfied both prongs of the first test that the *Community Credit Plan* court applied.

¶ 46. The second test the *Community Credit Plan* court applied was also a two-prong test: (1) whether the consumer received a significant benefit sought in litigation, and (2) whether there was a violation of a consumer protection statute by the defendant. 228 Wis. 2d at 35. We find this test to be satisfied as well. First, Kilian received the exact benefit he sought in his litigation—the cessation of Mercedes-Benz Financial's efforts to enforce the lease after Kilian received a refund from Mercedes-Benz USA. Based upon the record before us, it is clear that this was a significant benefit to Kilian as it served as the primary basis for his

[16] Nothing in the record indicates that either Mercedes-Benz USA or Mercedes-Benz Financial intentionally violated the Lemon Law.

complaint. Second, as we have discussed, Mercedes-Benz Financial violated Lemon Law § 218.0171(2)(cm)3. when it enforced the lease against Kilian after receiving notice of Kilian's refund. *See Id.* We conclude that, under either test articulated by the *Community Credit Plan* court, Kilian is the prevailing party under subsection (7).

### D. Recovery of Pecuniary Loss, Costs, Disbursements, Reasonable Attorney Fees, and Other Equitable Relief

¶ 47. We have determined that Kilian may maintain an action against Mercedes-Benz Financial for its violation of the Lemon Law and that Kilian qualifies as a prevailing party under subsection (7). Because of his status as a prevailing party, Kilian is entitled to "twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate." Wis. Stat. § 218.0171(7). We now discuss each remedy enumerated in subsection (7) and whether it is available to Kilian.

### 1. Twice Kilian's Pecuniary Loss

¶ 48. Under the Lemon Law, a consumer may seek relief for his or her purchase or lease of a "lemon" vehicle by requesting a refund from the manufacturer. *See* Wis. Stat. § 218.0171(2). This refund typically equals the sum of the consumer's lease payments and other collateral costs, less an allowance for reasonable use. *See* § 218.0171(2)(b)3.a. The refund must be provided to the consumer within thirty days after the consumer makes a proper offer to return the vehicle. *See* § 218.0171(2)(cm)1.

¶ 49. If the consumer's refund is delayed, miscalculated, or withheld, the consumer may commence

litigation under Lemon Law subsection (7). *See* Wis. Stat. § 218.0171(7). The consumer may sue for twice his or her pecuniary loss, in addition to other relief. *Id.* Pecuniary loss includes the purchase price of the car. *Hughes v. Chrysler Motors Corp.,* 197 Wis. 2d 973, 983, 542 N.W.2d 148 (1996).[17] The legislature's purpose in doubling the pecuniary loss was to "persuade manufacturers to settle legitimate warranty disputes so that consumers are not forced to litigate." *Id.* at 984 (internal citations omitted). This purpose—encouraging legitimate refunds and discouraging litigation—is instructive to our interpretation of the term "pecuniary loss."

¶ 50. On May 10, 2007, Kilian received a timely refund from Mercedes-Benz USA in the amount of $20,847.87. *See* Wis. Stat. § 218.0171(2)(b)3.b. This amount equaled the sum of Kilian's lease payments and other collateral costs paid by him between March 2006 and April 2007, less an allowance for his reasonable use. *See id.* After receiving this refund, Kilian filed suit because Mercedes-Benz Financial continued to enforce the lease against him. Kilian's motivation for filing suit against Mercedes-Benz Financial was *not* related to any delay, miscalculation, or withholding of his refund.

¶ 51. The legislature did not intend that consumers who have already received a proper refund should also recover twice the amount they paid under the lease as pecuniary loss. Granting Kilian's request would not serve subsection (7)'s purpose—to encourage manufacturers to provide consumers proper Lemon Law refunds without resorting to litigation—because he has already received a $20,847.87 refund. Such a result

---

[17] Pecuniary loss incorporates "a reasonable allowance for use" before being doubled. *Tammi,* 320 Wis. 2d 45, ¶ 61.

would provide a windfall to Kilian without advancing a central purpose of subsection (7)—discouraging manufacturers from withholding legitimate refunds.

■■

¶ 52. We conclude that, because Kilian has already received a properly calculated and timely refund, he did not suffer any pecuniary loss within the meaning of subsection (7). Therefore, we turn to a discussion of other relief available to Kilian under subsection (7).

### 2. Costs and Disbursements

¶ 53. Kilian is entitled to an award for his costs and disbursements caused by a violation of the Lemon Law. Wis. Stat. § 218.0171(7). Wisconsin Stat. § 814.04 sets forth the particular items which may be included in an award for costs and disbursements. These costs and disbursements are then taxed by the circuit court clerk against the losing party pursuant to Wis. Stat. § 814.10.[18] The costs and disbursements which may be awarded on appeal are set forth in Wis. Stat. § 809.25. Costs and disbursements on appeal are then taxed according to § 809.25(1)(d).[19]

---

[18] "This action may be reviewed by the court on motion of the party aggrieved made and served within 10 days after taxation." Wis. Stat. § 814.10(4).

[19] Wis. Stat. § 809.25(1)(d) states:

Costs allowed by the court are taxed by the clerk of the court of appeals, irrespective of the filing by a party of a petition for review in the supreme court. In the event of review by the supreme court, costs are taxed by the clerk of the supreme court .... The clerk of the supreme court shall include in the remittitur the costs allowed in the court. The clerk of circuit court shall enter the judgment for costs in accordance with s. 806.16.

¶ 54. Wisconsin's Lemon Law is a fee shifting statute.[20] "Fee shifting statutes contemplate that those recovering under them will be made whole." *Chmill v. Friendly Ford-Mercury of Janesville, Inc.*, 154 Wis. 2d 407, 413 n.2, 453 N.W.2d 197 (Ct. App. 1990). In order to fulfill the Lemon Law fee-shifting statute's purpose that those recovering be made whole, we have held that under subsection (7), costs and disbursements also include "reasonable expenses incurred in litigation above and beyond . . . those taxed as costs by a court clerk . . . ." *Id.* Therefore, in addition to the normal costs and disbursements awarded to Kilian under § 814.04 and § 809.25, the holding in *Chmill* also allows Kilian to recover any other "reasonable expenses incurred in litigation."[21] *Id.*

¶ 55. The circuit court did not determine the amount of Kilian's costs and disbursements. We therefore remand the cause to the circuit court to determine the appropriate amount.

### 3. Reasonable Attorney Fees

¶ 56. Kilian is also entitled to an award of reasonable attorney fees caused by Mercedes-Benz Financial's violation of the Lemon Law. Wis. Stat. § 218.0171(7). As a general rule, Wisconsin follows the "American Rule," pursuant to which litigants are required to pay their

---

[20] A "fee-shifting statute" is a statute that provides for an award of attorney fees for a prevailing plaintiff. *See* 11 Wisc. Prac., Trial Handbook for Wis. Lawyers § 37:04 (3rd ed.).

[21] These "reasonable expenses" exclude costs and disbursements already allowed to Kilian under § 814.04 so that Kilian receives no double recovery for overlapping items. *Chmill v. Friendly Ford-Mercury of Janesville, Inc.*, 154 Wis. 2d 407, 413 n.2, 453 N.W.2d 197 (Ct. App. 1990).

own attorney fees. *DeChant v. Monarch Life Ins. Co.*, 200 Wis. 2d 559, 571, 547 N.W.2d 592 (1996). This general rule does not apply when the legislature has chosen to award attorney fees to a prevailing party through a fee-shifting statute. *Id.*

¶ 57. We have held that "an important purpose of fee-shifting statutes is to encourage injured parties to enforce their statutory rights when the cost of litigation, absent the fee-shifting provision, would discourage them from doing so." *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2007 WI 98, ¶ 55, 303 Wis. 2d 258, 735 N.W.2d 93. Such fee-shifting statutes ensure "that individuals will enforce the rights provided to them under the statute by the legislature, even when the costs of litigation exceed the value of the action." *Id.* Lemon Law subsection (7) is such a fee-shifting statute, and thus, an exception to the American Rule. *See Chmill v. Friendly Ford-Mercury of Janesville, Inc.*, 144 Wis. 2d 796, 809, 424 N.W.2d 747 (Ct. App. 1988).

¶ 58. As a result, Kilian may recover reasonable attorney fees caused by Mercedes-Benz Financial's violation of Lemon Law § 218.0171(2)(cm)3.[22] The circuit court did not determine the amount of Kilian's reasonable attorney fees in the first instance. Therefore, we remand the cause to the circuit court to determine the appropriate amount.

### 4. Other Appropriate Equitable Relief

¶ 59. The final remedy allowed under subsection (7) permits the court to award Kilian "appropriate" equitable relief. Wis. Stat. § 218.0171(7). Because we

_____

[22] This includes "attorney fees for appellate work essential to the consumer's success." *Chmill,* 144 Wis. 2d 796, at 809.

held in Part III.C. that Kilian has already obtained the equitable relief he sought, cessation of the enforcement of the lease by Mercedes-Benz Financial, it is not appropriate to grant Kilian any other equitable relief in this case.

## IV. CONCLUSION

¶ 60. We conclude that Kilian may maintain an action for equitable relief under Lemon Law subsection (7) and that Mercedes-Benz Financial's enforcement of the lease after it was informed by Kilian's attorney that Kilian had received a refund, and after it assured Kilian that collections efforts would cease, violated the Lemon Law. We also conclude that Kilian prevailed in his action when Mercedes-Benz Financial voluntarily ceased enforcement of the lease after Kilian filed suit. As the prevailing party, we conclude that Kilian is entitled to his costs, disbursements, and reasonable attorney fees, but that Kilian is not entitled to an award for pecuniary loss. As a result, we reverse the court of appeals and remand the cause to the circuit court for a determination of the appropriate amount of Kilian's costs, disbursements, and reasonable attorney fees.

*By the Court.*—The decision of the court of appeals is reversed, and the cause remanded to the circuit court for further proceedings consistent with this opinion.

¶ 61. ANNETTE KINGSLAND ZIEGLER, J., did not participate.

¶ 62. PATIENCE DRAKE ROGGENSACK, J. (*concurring*). I join the majority opinion, but I write in concurrence in order to point out a gap in Wisconsin's

Lemon Law, Wis. Stat. § 218.0171 (2009–10),[1] and to urge the Wisconsin Legislature to close this gap.[2] Namely, the Lemon Law does not require the manufacturer to notify a financing institution that finances a lease or a purchase when the owner has returned the car to the manufacturer under the law. This gap has caused concerns in the present case. I foresee that the lack of such a notice requirement has the potential to cause adverse effects both to the consumer and to financing institutions.

¶ 63. First, as the majority underscores, without a requirement that the manufacturer notify financing institutions that a vehicle has been returned pursuant to the Lemon Law, a consumer may be adversely affected.[3] Without notice of the return, the financing institution will likely continue in its efforts to collect payments that it believes the consumer owes under the financing agreement. For example, the financing institution could harm a consumer's credit rating by reporting the missed payments or, in an attempt to prevent harm to his credit rating, a consumer may be forced to incur litigation expenses in order to stop enforcement efforts.

¶ 64. Second, without a requirement that the manufacturer notify financing institutions that the vehicle has been returned pursuant to the Lemon Law, financing institutions may be adversely affected. Pursuant to Wis. Stat. § 218.0171(2)(cm)3., "[n]o person may enforce the lease against the consumer after the consumer receives a refund." The majority holds today

---

[1] All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

[2] A referral to the legislature's law review committee of the Legislative Council may be of assistance in this matter.

[3] Majority op., ¶ 35 n.14.

that under this subdivision, a financing institution can be held liable for enforcing a lease after the consumer returns the vehicle to the manufacturer and receives a refund.[4] Moreover, the majority holds that, if the consumer prevails in an action against the financing institution for enforcing a lease after the vehicle has been returned, the consumer may receive costs, disbursements, and reasonable attorney's fees.[5] This is in addition to any other damages incurred.

¶ 65. In the case at hand, these conclusions are not troublesome because Kilian informed Mercedes-Benz Financial that he had returned his car under the Lemon Law, and therefore, Mercedes-Benz Financial was on notice that it was improper to continue collection efforts against Kilian. However, the conclusions we reach today become troublesome where the financing institution has not had notice that the consumer has returned the vehicle to the manufacturer.

¶ 66. In order to avoid unwarranted adverse consequences to consumers and to financing institutions, it would be helpful if the Wisconsin Legislature amended Wis. Stat. § 218.0171 to add two notice requirements to Wisconsin's Lemon Law upon the return of the vehicle: (1) that the consumer notify the manufacturer of the current financing information for the vehicle[6]

---

[4] *Id.*, ¶ 34.

[5] *Id.*, ¶¶ 53–58.

[6] Not surprisingly, the standard Lemon Law notice form provided by the Department of Transportation already asks the consumer to provide the manufacturer with this information and to authorize the manufacturer to contact the financing institution. *See* Motor Vehicle Lemon Law Notice, available at http://www.dot.wisconsin.gov/safety/consumer/forms/11frm 700.pdf

and (2) that the manufacturer notify the financing institution of the vehicle's return. Accordingly, I respectfully concur.

htm (scroll down to "What should a lemon owner do?" and click on "Motor Vehicle Lemon Law Notice" pdf link). However, the statutes do not so require.